Peter Haskell, a minor, by Ralph Haskell, his father and next friend, Plaintiff-Appellee, v. J. P. Perkins, Henry Otte, Walter L. Tinsley, Harry Hanson and Albert W. Siegmund, Defendants. Albert W. Siegmund, Defendant-Appellant.

Gen. No. 10,138.

Third District.

February 21, 1958.

Rehearing denied April 2, 1958.

Released for publication April 2, 1958.

430

Hugh J. Graham, Jr., of Springfield, and A. J. B. Showalter, of Champaign, for appellant.

Robert C. Summers, and C. E. Tate, both of Champaign, for appellee.

PRESIDING JUSTICE CARROLL delivered the opinion of the court.

Peter Haskell, a minor, by Ralph Haskell, his father and next friend, brought this action in the Circuit

Court of Champaign County against J. P. Perkins, Henry Otte, Walter L. Tinsley, Harry Hanson and Albert W. Siegmund to recover damages for personal injuries allegedly resulting from the negligence of the defendants.

The complaint charged joint, several and concurrent negligence on the part of the defendants and as to the defendant Siegmund, it is alleged therein that he "carelessly and negligently operated, maintained, controlled and drove his said automobile so that as a direct and proximate result thereof the plaintiff was injured; and (b) carelessly and negligently stopped, parked or left his said automobile upon the paved portion of the said highway so as to block the said highway contrary to and in violation of Chapter 95½, Paragraph 185, Ill. Rev. Stats. 1955."

Judgment by default in the amount of $25,000 was entered against the defendant Tinsley. Before the trial, a guardian ad litem was appointed for the defendant Albert W. Siegmund, a minor. The cause as to the defendants other than Tinsley proceeded to trial before a jury. At the close of plaintiff's case, the court directed a verdict in favor of defendant Otte. The jury returned a verdict for $35,000 against the defendants Perkins and Siegmund and found the defendant Hanson not guilty.

Defendants' post trial motion was overruled and judgment was entered on the verdict. This appeal is prosecuted by the defendant Siegmund.

At the time of his injury, plaintiff was 19 years old and an air force student stationed at Chanute Field, Illinois. On the evening of August 5, 1955, he and a fellow student, Louis Martinez, met the defendant at a drive-in movie in Champaign. At about 11:30 that evening, plaintiff and his companion were invited by defendant to ride with him to Danville, Illinois. The weather was clear and visibility good. The party of

432

three left Champaign in defendant's Chevrolet automobile with defendant driving. Defendant drove east on Route 150 toward Danville to a point about ¼ of a mile west of the Village of Fithian, where he observed the defendant Otte's Studebaker car which was crosswise on the north shoulder of the highway, facing northwest with its front wheels in a small ditch north of the pavement. Defendant suggested stopping as the disabled car might need some help. However, the defendant did not stop but drove on into Fithian and then turned around and returned to the place where the Otte automobile was standing. The defendant then parked his car on the north shoulder of the highway 10 to 12 feet east of the Otte Studebaker and he and his passengers walked to the Otte car. Defendant offered his help in getting the Studebaker out of the ditch and Otte gave him a rope. Plaintiff and Martinez walked east about 10 feet from the Studebaker and stood north of a ditch on the roadside about 18 to 21 feet north of the pavement. The paved portion of Route 150 was 18 feet wide with shoulders on both sides thereof. The north shoulder was 8 to 10 feet wide and slopes away from the pavement 15 or 16 feet to a ditch which was from 6 inches to a foot in depth. Just prior to this time, Harry Hanson, driving a 1954 stakebody Ford truck and accompanied by his son Paul, came upon the scene and was waved down by Otte. Hanson thereupon stopped his truck about 45 or 50 feet west of the Otte car, leaving his left rear dual wheels on the north edge of the pavement. The truck was 7½ feet in height and approximately 1½ feet higher than the defendant's Chevrolet. Defendant then pulled his car on to the pavement and backed it to within a few feet of the rear-end of the Studebaker and tied the rear bumpers of the two cars together with the rope furnished by Otte. When defendant attempted to pull the Studebaker, the rope broke.

Defendant attempting to retie the rope, drove his car to the south shoulder and again backed it north across the pavement to a point where the rear of his car was 3 to 5 feet south of the Studebaker. Harry Hanson testified that he went 150 feet west of his truck and set out a reflector flare; that his son went 330 to 350 feet east of the Studebaker, placed a flare on the north edge of the pavement and waved a flashlight back and forth across the road. At about that time, the defendant Tinsley, driving a Chrysler car, and the defendant Perkins, driving a Buick car, approached the scene from the east. The evidence as to whether there were any reflectors or warning signals on the highway as Perkins approached is in conflict. The same is true of the evidence as to what lights were burning on the three vehicles standing at the scene. The Tinsley and Perkins cars were 3 or 4 car lengths apart and traveling between 55 and 70 miles per hour with the Chrysler in the lead. Tinsley swerved his car to the left on to the south shoulder of the road and passed the scene without incident. When the Tinsley car swerved, Perkins pulled his Buick to the north shoulder, went completely off the pavement and struck plaintiff, injuring him severely. After striking plaintiff, the Perkins car went forward in the ditch and struck the Studebaker. Perkins was unable to fix the point at which he turned his car on to the shoulder or how far the car travelled before striking the Studebaker. Other witnesses testified that the Perkins car was completely off the road for a distance of almost 400 feet.

The grounds upon which defendant's appeal is based are that as a matter of law, his conduct was not the proximate cause of plaintiff's injury but that the conduct of Perkins was the sole proximate cause thereof; that plaintiff was guilty of contributory negligence as a matter of law or in the alternative as shown by

434

the greater weight of the evidence; that plaintiff was a guest of defendant and was required to allege and prove wilful and wanton misconduct as against the defendant; that the rights of defendant, who is a minor, were not properly protected by the trial court and that the verdict is excessive.

■ The rule applicable in determining whether a negligent act or omission is the proximate cause of an injury is well established and has been recited in numerous decisions. It is tersely stated in Neering v. Illinois Cent. R. Co., 383 Ill. 366, where the court said:

"What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act. (Illinois Central Railroad Co. v. Oswald, 338 Ill. 270; Hartnett v. Boston Store of Chicago, 265 Ill. 331.) An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury. (Illinois Central Railroad Co. v. Oswald, 338 Ill. 270; Pullman Palace Car Co. v. Laack, 143 Ill. 242). The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable."

■■ As to what is the proximate cause of an injury is ordinarily a question of fact to be determined by the jury from a consideration of the attendant circumstances and all the evidence in the case. I. L. P. Negligence, Sec. 267. It is only where the facts are not

435

only undisputed but are such that reasonable men would not differ in their opinion as to the inferences to be drawn therefrom that the question of proximate cause becomes one of law for the court. Manion v. Chicago, Rock Island & Pacific Ry. Co., 12 Ill.App.2d 1. If there is sufficient evidence in the record to support a finding that the alleged negligence was the proximate cause of the injury for which plaintiff sues, then such issue becomes one of fact for the jury. McClure v. Hoopeston Gas & Electric Co., 303 Ill. 89; Kahn v. James Burton Co., 5 Ill.2d 614; McLaughlin v. Alton Railroad, 278 Ill. App. 551.

In passing upon the contention that as a matter of law the sole proximate cause of plaintiff's injury was not the conduct of defendant but that of defendant Perkins, the determinative question is whether the evidence was sufficient to take this issue to the jury. The evidence discloses no dispute as to the fact that as the Perkins and Tinsley cars approached the scene of the accident, the defendant's car was standing crosswise on the paved portion of the road; that defendant was then engaged in tying a rope between the rear of his car and the Otte Studebaker; that defendant's car blocked the entire westbound traffic lane and a portion of the eastbound lane; that the Hanson truck, which was about 1½ feet higher than the defendant's Chevrolet, was parked on the north shoulder 45 to 50 feet west of the Otte car; that the left rear wheel of the truck was on the pavement; that the lights on the rear of the truck were burning; that plaintiff took no part in the attempted car moving operation but was standing about 20 feet north of the pavement; that the Tinsley car reached the scene first and was 3 to 4 car lengths ahead of the Perkins' car; and that the Otte car was on the north shoulder of the highway at a right angle to the pavement.

The evidence as to the speed of the Perkins and Tinsley cars; the distance the Perkins' car travelled after leaving the pavement; as to how far he was from the scene when he left the pavement and the presence of reflectors or the waving of signals is conflicting. There also appears to be considerable controversy concerning the testimony of Perkins as to what caused him to swerve his car to the right on to the shoulder and into the ditch. The defendant contends that the testimony of this witness is conclusive on that feature of the case. Called by plaintiff as a witness under Section 60 of the Civil Practice Act [Ill. Rev. Stats. 1957, Ch. 110, § 60], Perkins testified that after the Chevrolet turned to the left, the first thing he saw was the truck which was on the pavement; that he saw no lights on it and saw no flares or reflector. Upon reexamination he stated that when he turned left he saw something on the road ahead of him; that it was a motor vehicle which looked to him as though it was crosswise of the highway and had the highway blocked and that he did not see any other vehicle further west. When called as a witness in his own behalf, Perkins, in substance, repeated the above statements. Clarence Thurman, a passenger in the Perkins' car, testified that when the Perkins' car turned right and went into the ditch, he looked ahead, saw something in the road but could not tell what it was. This witness further stated "I saw a dark object as we left the pavement and before we left, he hit the brakes." When the foregoing is considered together with the testimony of other witnesses and with the evidence as to other circumstances existing at the time of the accident, it becomes evident that the jury were not bound to accept Perkins' version as to the cause of his leaving the road as being true and uncontradicted. There was also before the jury the testimony of the witness Paul Han-

437

son, who in substance testified that as the Chrysler and Buick cars came upon the scene, he was standing near the pavement at a point 300 to 350 feet east of the accident; that he was waving a flashlight; that he could see the red lights on the rear of the truck; that he saw the defendant back his car up to the Studebaker and go to the back of his own car; that he turned around and saw the Chrysler and Buick cars coming out of Fithian; that the defendant's car was then backed up to the Studebaker; that the driver of the Chrysler car slammed on his brakes and veered off to the right; that the Buick almost ran into the Chrysler but pulled off to the north and left the pavement completely. We think that from this evidence it might be reasonably inferred that the defendant's car crosswise of the pavement was the object seen by the Chrysler driver which caused him to apply his brakes and that in turn the braking and veering of the Chrysler car caused the Buick to swerve to the right and leave the pavement.

■ We are of the opinion that when all of the evidence is considered, the question as to whether the conduct of defendant proximately contributed to cause plaintiff's injury was one of fact to be determined by the jury. The verdict indicates the jury's conclusion that the negligence of both defendant and Perkins concurred in bringing about plaintiff's injury. Where the conduct of more than one person serves to bring about an injury, the applicable test in determining the question of proximate cause is whether under the circumstances, the first wrong-doer might reasonably have anticipated the intervening act of another person as the natural and probable result of his own negligence. Merlo v. Public Service Co., 381 Ill. 300; Berg v. New York Cent. R. Co., 391 Ill. 52.

■ ■ When the defendant in his efforts to extricate the Otte car from the ditch, backed his car across

438

the pavement of a state highway in the open country in the nighttime and permitted it to remain there while he tied a rope to the disabled car, we think it must be said that he could have reasonably anticipated the approach at high speed of cars from either direction and could have reasonably foreseen that the driver of an approaching car in an attempt to avoid a collision with defendant's car might swerve from the pavement and as a result injure plaintiff who was standing some 20 feet from the pavement. The fact that Perkins, the driver of such approaching car, was guilty of negligence contributing to plaintiff's injury cannot relieve defendant of liability. If plaintiff's injury was caused by the negligence of both defendant and Perkins, then the negligence of each was the proximate cause of such injury. The evidence appears to afford ample support for the jury's conclusion.

 We perceive no merit in defendant's contention that plaintiff was guilty of contributory negligence as a matter of law. The evidence shows no participation by plaintiff either in planning or carrying out the operation in which defendant was engaged when the accident occurred. While that operation was in progress, plaintiff went to and remained in a place which we think he might reasonably regard as safe and was in effect a bystander. Illinois Cent. R. Co. v. Oswald, 338 Ill. 270, cited by defendant, is not applicable to the facts in this case. Since we regard the question of due care on the part of plaintiff as being one of fact for the jury, its findings in that respect may be disturbed only if clearly and palpably erroneous. Thomas v. Smith, 11 App.2d 310.

 The record discloses that on April 3, 1956, which was six days prior to the beginning of the trial, upon defendant's minority being called to its attention, the court appointed a guardian ad litem for the defendant. The guardian ad litem appointed was A. J. B.

Showalter, one of the attorneys who represented defendant on the trial and perfected this appeal. The trial record amply evidences the fact that the guardian ad litem is an experienced trial lawyer who ably represented the defendant's interests. Prior to his appointment as guardian ad litem, Attorney Showalter had filed an answer in behalf of defendant in which the allegations of the complaint are denied. Despite the disclosure by the record of the foregoing, defendant insists that as a minor his rights were not properly protected by the trial court. The principal reasons advanced in support of such argument are that no answer was filed by the guardian ad litem; that the guardian ad litem was never informed of his appointment and as a result the jury were not made aware of such appointment. Where, as in this case a minor is brought into court, it becomes the duty of the court to appoint a guardian ad litem for the purpose of protecting the rights of such minor. Kroot v. Liberty Bank of Chicago, 307 Ill. App. 209. Failure of the record to show compliance by the trial court with such duty has been held error requiring reversal of any judgment rendered against the minor. Collins v. Hastings, 283 Ill. App. 304; Blincoe v. Miller, Jr., 11 Ill.App.2d 247 (abstract). The record in the instant case affirmatively shows the appointment of a guardian ad litem for the defendant and also shows the filing of an answer by Attorney Showalter previous to his appointment. Defendant's contention, however, suggests that because of the failure of the record to show that the guardian ad litem was given notice of his appointment, and because of the failure thereof to show that the defendant's answer was formally adopted as the answer of the guardian ad litem, it follows that defendant's rights were prejudiced. With this contention, we cannot agree. The record discloses that prior to his appointment, the guardian ad litem

440

was one of the attorneys representing the minor defendant and that he continued in such capacity all during the trial. This being true, we think it reasonable to conclude that he was upon notice as to all proceedings in the case including his appointment as guardian ad litem for the minor defendant. If failure of plaintiff to serve the guardian ad litem with a formal written notice of his appointment, in any manner worked to the disadvantage of the minor in the presentation of his defense, the same is not reflected by the record. While the record does not disclose a formal adoption by the guardian ad litem of the defendant's answer on file at the time of his appointment, nevertheless such fact does not of itself establish that the minor defendant went to trial without proper pleadings having been filed on his behalf. Palmer v. DeFilippis, 321 Ill. App. 186. His answer constituted a denial of all the complaint allegations directed against him. It admitted nothing so far as defendant's liability is concerned. What other or different answer the guardian ad litem might or could have filed is not pointed out. The record does not justify any inference that the guardian failed in his duty to his ward but on the contrary indicates compliance on his part with the rule announced in Tymony v. Tymony, 331 Ill. 420, where the court said:

"The rule is inflexible in this State that the guardian *ad litem* shall make a defense of the interests of the infant as vigorous as the nature of the case will admit. (Sconce v. Whitney, 12 Ill. 150; Enos v. Capps, id. 255.) It is understood to be the special duty of such guardian to submit to the court for its consideration and decision every question involving the rights of the infant affected by the suit. (Rhoads v. Rhoads, 43 Ill. 239.) It is the duty of the guardian *ad litem*, when appointed, to examine into the case and determine what the rights of his ward are and what defense his

441

interest demands and to make such defense as the exercise of care and prudence will dictate."

We think the record under consideration abundantly demonstrates the fact that the guardian ad litem vigorously defended the interests of the minor throughout the course of the trial.

It is defendant's further contention that at the time of the injury, he was a guest within the meaning of Sec. 58a, Chap. 95½ Ill. Rev. Stats. 1955. The complaint alleged plaintiff was a passenger and the case was tried upon that theory. The facts as to the relationship of the parties is not in dispute. Plaintiff accepted defendant's invitation to ride to Danville and the trip began. One and one fourth miles west of Fithian defendant suggested stopping to help a motorist whose car was in the ditch. He then did not do so but drove on into Fithian. In Fithian defendant apparently decided to help the motorist that he had observed in the ditch and turned around and drove back to where he had seen the stalled car. At that point, defendant stopped and plaintiff got out of the car and took a position some 20 feet north of the pavement where he was later struck by the Perkins' car. There is no evidence in the record that defendant's conduct in engaging in the hazardous enterprise of attempting in the nighttime to move a disabled car from a ditch was in any manner related to the transportation of plaintiff from Champaign to Danville.

In Tallios v. Tallios, 350 Ill. App. 299 relied upon by defendant, the plaintiff was held not to have lost her status as a guest where it appeared that while in a truck she discovered that she did not have her purse; that the driver brought the truck to a stop; that she backed out of the truck to feel under the seat and while she stood with her left foot on the pavement and her right foot on the running board, the truck went for-

ward, knocking her down. In passing upon the question as to whether the guest relationship existed at the time of the injury, the court said:

"The stopping of the automobile to permit further search for plaintiff's purse and the act of plaintiff in getting out of the car to more effectively make the search, were usual and customary acts incidental to a normal courtesy to plaintiff as defendant's guest. She did not lose her status as a guest."

The instant record shows that the plaintiff got out of defendant's car because his host stopped his car on a highway in the country to help a stranded motorist. Certainly stopping for such purpose was not an act incidental to any courtesy being extended by defendant to his guests. Clearly the Tallios case does not support defendant's argument. More in point is Rohr v. Employers' Liability Assurance Corp., 243 Wis. 113, where plaintiff, a passenger in defendant's car, was injured in Illinois while helping change a tire. The court, applying Illinois Guest Statute, held that at the time of the accident, the parties did not "sustain the relationship of host and guest."

Under the facts appearing in this record, we conclude that plaintiff was not a guest and was not required to allege and prove wilful and wanton misconduct on the part of defendant.

■■■■ In considering defendant's contention that the verdict is against the manifest weight of the evidence, we deem it sufficient to observe that from the evidence upon which we have previously commented, the questions of negligence, contributory negligence and proximate cause were for the jury. Only where a conclusion opposed to that reached by the jury is clearly evident can a reviewing court hold a verdict to be against the manifest weight of the evidence. Dinger v. Rudow, 13 Ill.App.2d 444; DeLong v. Whitehead, 11

Ill.App.2d 330; Green v. Keenan, 10 Ill.App.2d 53. On the record before us, we cannot say that the verdict of the jury is against the manifest weight of the evidence.

█ █ Lastly, defendant claims the damages allowed plaintiff are excessive. The evidence shows that plaintiff was an air force student and in good health prior to the occurrence. That he suffered a compound comminuted fracture of the leg, head injuries and cuts and bruises about the body; that an open reduction of the fracture was made and an 8 inch plate inserted; that an osteomyelitis infection developed requiring additional surgery; that hospitalization and treatment extended from the date of the injury to the trial; that there is some limitation of knee and ankle motion; that the osteomyelitic condition is permanent; and that plaintiff had suffered pain since the accident; and that the testimony of attending physicians indicates plaintiff will require further hospitalization and treatment. It is the rule that a jury's award of damages for personal injuries will not be disturbed unless the amount is so excessive as to indicate it to be the result of improper motive. Andres v. Green, 7 Ill.App.2d 375. In view of the evidence pertaining to plaintiff's injuries, we cannot say that the verdict is excessive.

We find no reversible error in this record and therefore the judgment of the trial court is affirmed.

Affirmed.

REYNOLDS and ROETH, JJ., concur.