*In re* R.D., a Minor, Respondent-Appellant (The People of the State of Illinois, Petitioner-Appellee, v. R.D., Respondent-Appellant).

First District (3rd Division) No. 84—519

Opinion filed June 25, 1986.—Rehearing denied November 18, 1986.

Steven Clark and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Christopher J. Cummings, and Michael J. Marovich, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Two delinquency petitions were filed in the juvenile division of the circuit court of Cook County in reference to R.D., one containing two counts of battery, and the instant petition which alleges the offense of armed robbery. R.D. appeals from orders entered in the robbery case. That petition originally included the name of R.D.'s mother, who was his custodial parent, and the name of his stepfather who divorced R.D.'s mother 12 years prior to the proceedings in this case. The whereabouts of the natural father are unknown. He has no contact with the minor, and there is some doubt as to whether the mother knows his identity.

The record shows that on June 9, 1983, R.D. was present but no parent or guardian appeared. The court ordered the issuance of summons and continued the case to June 27, 1983, for arraignment and plea. On June 27, 1983, again no parent or guardian was present and the following colloquy took place between the judge and the juvenile:

"THE SHERIFF: [R.D.] AKA Hall.

THE COURT: Mother's name is Joan [D]?

[R.D.]: Yes.

THE COURT: Lives on St. Louis?

[R.D.]: No. 3316 Sunnyside.

THE COURT: That is West Sunnyside?

[R.D.]: Yes.

THE COURT: Your father is Henry [D]?

[R.D.]: Stepfather.

THE COURT: What's your natural father's name? Nobody with the gentleman. Public Defender appointed attorney and guardian ad litem.

MS. GLADE [Public Defender]: Accept appointment, enter denial, stipulate to juvenile jurisdiction, enter written motion for discovery.

THE COURT: Your mother work?

[R.D.]: No.

THE COURT: Who do you live with?

[R.D.]: Mother.

THE COURT: You haven't seen your father in more than a year, your natural father?

[R.D.]: No.

THE COURT: All right. Motion State to amend petition sustained."

The public defender was appointed to act both as R.D.'s lawyer and guardian *ad litem*. A denial to the charges was entered. The court struck the name and address of the stepfather from the petition, and changed the address of R.D.'s mother to that of her current residence. Summons for mother was ordered and the case was continued to July 12, 1983. The record shows that on July 12, 1983, R.D., his mother, his sister, and his lawyer, the public defender, were all present.

After being thoroughly advised by the trial judge of his constitutional rights and the possible consequences of his actions, R.D. withdrew his denial and told the court in his own words how the robbery occurred. An admission to the charges was entered, there was a finding of delinquency, a social investigation and a clinical examination

were ordered and the case was continued for disposition.

At the dispositional hearing, the trial court received recommendations from a probation officer and a representative of the Uniform Delinquency Intervention Service (UDIS). Both recommended that R.D. be placed on probation. The court committed the minor to the Department of Corrections.

■ Minor-respondent now alleges that: (1) the trial court lacked jurisdiction because the natural father and stepfather were not given notice of the proceedings; (2) the public defender should not have served as guardian *ad litem*; (3) the judge should have withheld adjudication of wardship until the dispositional hearing; and (4) the judge abused his discretion by committing the minor to the Department of Corrections.

Minor-respondent first argues that the circuit court lacked jurisdiction because the State failed to serve notice of the wardship proceedings on the minor's natural father and the stepfather.

The Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 701—1 *et seq.*) outlines the proper procedure for notifying individuals who have an interest in the proceedings for wardship of a minor: the State must name every parent, legal guardian and custodian, or nearest relative when necessary, as a respondent. (Ill. Rev. Stat. 1981, ch. 37, par. 704—1.) If possible, the State must serve each of these individuals with personal service; otherwise, service must be made by publication. (Ill. Rev. Stat. 1981, ch. 37, pars. 704—3, 704—4.) However,

> "[n]otice by publication is not required in any case when the person alleged to have legal custody of the minor has been served with summons personally or by certified mail, but the court may not issue any order or judgment against any person who cannot be served with process other than by publication unless notice by publication is given or unless that person appears." Ill. Rev. Stat. 1981, ch. 37, par. 704—4(2).

The Illinois Supreme Court has applied 704—4(2) in cases where minors have raised as error the failure of the trial court to notify a parent with whom they have no contact. It has held that where one parent has actual, sole custody of the minor and received actual notice of the proceedings, if the noncustodial parent could not have been served by personal or abode service or by certified mail, service by publication is excused by section 704—4(2). (*In re J.P.J.* (1985), 109 Ill. 2d 129, 137, 485 N.E.2d 852; see also *In re L.E.J.* (1983), 115 Ill. App. 3d 993, 451 N.E.2d 289.) In the case now before us, service was made on the custodial parent, and service could not have been made other than by publication on the noncustodial father. The language of

the statute therefore relieved the State of its obligation to publish notice to the noncustodial father.

We believe that the facts of the instant case are well aligned with those of *In re J.W.* (1981), 87 Ill. 2d 56, 429 N.E.2d 501. J.W. was an illegitimate minor. The whereabouts and identity of his father were unknown. No effort was made to publish notice to the unknown father. Although the mother, who had custody of the minor, was not personally served, she had actual notice and attended the proceedings. Our supreme court held that failure to join the father deprived the court of personal jurisdiction over the father. However, the vital interests of the minor were well protected in his absence, and the absent father was not an indispensable party. Failure to publish did not result in any lack of jurisdiction over the subject matter, or lead to any loss of jurisdiction over the persons of the minor and his mother.

"The unknown father is a stranger to the minor. If alive, he knows nothing of the minor or of the facts to be adjudicated. The minor could not reasonably repose in him any special trust or confidence. The minor has not suggested how the father's presence could have aided his defense, and the father's absence was not, therefore, unfair to the minor. The minor had the assistance of his mother, who was his only known parent and his sole custodian, as well as of legal counsel; the minor, the mother, and counsel all had adequate notice of the charges and an opportunity to defend against them. The failure to publish notice to the phantom father did not deprive the minor of liberty without due process of law, much less deprive the court of jurisdiction over the person of the minor." (*In re J.W.* (1981), 87 Ill. 2d 56, 58-59, 429 N.E.2d 501.)

No reversal is required here on the basis of the State's failure to notify the natural father.

■ Similarly, no notice to the minor's stepfather was required. The record indicates that the minor's mother was married to the stepfather for only two years, and was divorced from the stepfather when the minor was four years old. There is no indication that the minor maintains any contact with the stepfather, nor of any effort by the stepfather to adopt the minor. Under the reasoning of *J.W.*, we must conclude that no interests of the minor were jeopardized by the failure to notify the stepfather. Accordingly, we find there was no impropriety in holding the wardship proceedings without notice to the natural father and stepfather of R.D.

As indicated above, when no parent or guardian appeared on behalf of R.D., the court appointed the public defender to serve as

guardian *ad litem.* The appointment was made pursuant to the Juvenile Court Act which provides:

"(2) Before proceeding with the hearing, the court shall appoint a guardian ad litem for the minor if

(a) no parent, guardian, custodian or relative of the minor appears at the first or any subsequent hearing of the case;" Ill. Rev. Stat. 1981, ch. 37, par. 704—5(2)(a); *City of Danville v. Clark* (1976), 63 Ill. 2d 408, 348 N.E.2d 844.

■ The minor now contends that the attorney's duty to advocate zealously the wishes of her client were in conflict with her duty as guardian *ad litem* to act out of concern for the broader interests of society. First, we observe that the record does not show any action taken by the public defender as guardian *ad litem,* other than standing in place of the absent parents at the arraignment. At all subsequent hearings a parent was present and there was no need and no occasion for guardian *ad litem* services. Although the record does not show a formal withdrawal by the public defender from the role of guardian *ad litem,* neither does it show any actions performed in that capacity in any hearing leading to the orders from which this appeal is taken. Further, we do not agree that in the juvenile court the roles of lawyer and guardian *ad litem* are inherently in conflict.

In *Clay v. Friedman* (N.D. Ill. 1982), 541 F. Supp. 500, the district court compared the roles of court-appointed guardians *ad litem* and public defenders:

"In all critical respects, the role of the guardian ad litem is almost identical to that of a public defender. He or she is a fiduciary who must act in the minor's best interest. In a criminal proceeding the guardian ad litem is necessarily opposed to the State's position. *** Both the statute and the case law as to guardians ad litem demonstrate their duty of loyalty is to the minor, not the State." 541 F. Supp. 500, 503.

This court has considered and affirmed cases in which counsel has acted as guardian *ad litem.* In *In re K.M.B.* (1984), 123 Ill. App. 3d 645, 462 N.E.2d 1271, the public defender served as the minor's guardian *ad litem* throughout the delinquency proceedings. The minor and her mother wanted to remove the public defender as counsel because the attorney had recommended, against the wishes of the minor, that the minor be placed in a juvenile home. The appellate court upheld the trial court's refusal to remove the public defender, stating:

"The responsibility of the court-appointed juvenile counsel, however, is different than that of other court-appointed counsel. The juvenile counsel must not only protect the juvenile's le-

gal rights but he must also recognize and recommend a disposition in the juvenile's best interest, even when the juvenile himself does not recognize those interests. As our supreme court stated in *In re Beasley* (1977), 66 Ill. 2d 385, 389, 362 N.E.2d 1024, 1026:

> 'Although such a proceeding [under the Juvenile Court Act] retains certain adversary characteristics, it is not in the usual sense an adversary proceeding, but it is one to be administered in a spirit of humane concern for and to promote the welfare of the minor as well as to serve the best interests of the community.'

> \* \* \*

> Although the juvenile's counsel should consider the juvenile's wishes and inform the court of those wishes, the counsel has an obligation to protect the juvenile's best interest. If protecting a juvenile's best interest requires that the counsel make a recommendation contrary to the juvenile's wishes, then the counsel has, as Judge Witte stated, a 'professional responsibility and obligation' to make that recommendation." (*In re K.M.B.* (1984), 123 Ill. App. 3d 645, 647, 648, 462 N.E.2d 1271; see also *Haskell v. Perkins* (1958), 16 Ill. App. 2d 428, 148 N.E.2d 625.)

We believe that the juvenile counsel and the guardian *ad litem* have essentially the same obligations to the minor and to society.

■■ ■ The minor further contends that the judge committed reversible error in making the minor's wardship determination at the adjudicatory rather than the dispositional hearing. The adjudicatory proceedings took place on July 12, 1983; the dispositional proceedings took place on August 25, 1983. At the time of these proceedings, the Juvenile Court Act required that adjudications of wardship be made at the adjudicatory proceedings:

> "(2) If the court finds that the minor is a person described in Section 2—1 and that it is in the best interests of the minor and the public that he be made a ward of the court, the court shall note in its findings whether he is delinquent, addicted, requiring authoritative intervention, neglected or dependent, \*\*\* and shall adjudge him a ward of the court and proceed at an appropriate time to a dispositional hearing." (Ill. Rev. Stat. 1983, ch. 37, par. 704—8(2).)

On January 1, 1984, an amendment to this section went into effect. Under the amendment, an adjudication of wardship must be made at the dispositional proceeding. (Ill. Rev. Stat. 1985, ch. 37, par. 704—

8(2).) The minor now argues that the same policy considerations that led to the adoption of the amendment required the court to apply the new law to his delinquency proceedings, which were held before the amendment became effective.

In Illinois, the general rule is that, in the absence of a savings clause, statutory changes relating only to procedural or remedial provisions may be applied immediately to pending cases. (*Board of Managers v. Chase Manhattan Bank* (1983), 116 Ill. App. 3d 690, 692-93, 452 N.E.2d 382.) "It is one thing, however, to hold that a pending action will in its future course be governed by new procedure enacted during the pendency of the action and quite another thing to hold that an amendment will operate to wipe out previously instituted and pending actions." (*E. P. Lawson Co. v. Browne* (1943), N.Y.S.2d 929, 930, 180 Misc. 1000.) In the instant case, the proceedings were no longer pending in the trial court when the amendment went into effect. The amendment made only procedural changes. We find no reason to reverse the decision of the trial court, which was made in accordance with the law in effect at the time of the proceedings.

■ Finally, the minor-respondent contends that the trial court abused its discretion by committing him to the juvenile division of the Department of Corrections, despite the recommendations of probation from his probation officer and the UDIS representative. Once a juvenile is found delinquent, the Juvenile Court Act provides various dispositional alternatives to the trial judge. (Ill. Rev. Stat. 1981, ch. 37, par. 705—2.) The choice of dispositional order rests within the sound discretion of the trial court. It need not defer to any particular disposition. *In re Buchanan* (1978), 62 Ill. App. 3d 463, 467, 379 N.E.2d 122.

Here, the record shows that the minor had one prior delinquency adjudication, had been placed on supervision, had six delinquency petitions which were stricken with leave to reinstate, and had 12 station adjustments. He also has a drug problem, does not attend school, and is beyond the control of his mother. After considering the information provided to the trial court in formulating its decision, we cannot say that its decision constitutes an abuse of discretion.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

RIZZI, P.J., and McNAMARA, J., concur.