*In re* K.M.B., a Minor (The People of the State of Illinois, Petitioner-Appellee, *v.* K.M.B., Respondent-Appellant).

Fourth District   No. 4—83—0611

Opinion filed April 24, 1984.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and Linda Welge, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE MILLS delivered the opinion of the court:

K.M.B., a 13-year-old female, appeals the circuit court's order placing her in the Salem Children's Home. She contends that she was denied her constitutional right to counsel during the dispositional hearing.

We disagree and affirm.

### THE FACTS

On October 1, 1982, K.M.B. was found to be delinquent and adjudicated a ward of the court. She was placed on probation for 24 months. On April 18, 1983, Judge Witte found that K.M.B. had wil-

fully violated the conditions of her probation and revoked her probation. Elizabeth Robb, an assistant public defender, served as K.M.B.'s guardian *ad litem* throughout all of these proceedings.

At the dispositional hearing, Robb again appeared on behalf of K.M.B. Robb informed Judge Witte that K.M.B. had requested her to withdraw as counsel because—contrary to K.M.B.'s wishes—Robb wanted to recommend that K.M.B. be placed in a juvenile home. K.M.B. wished to remain in her mother's home. K.M.B.'s mother also asked Judge Witte to replace Robb as K.M.B.'s counsel.

Judge Witte replied that Robb was employed by the county as an attorney to represent K.M.B. and also to use her professional judgment to protect K.M.B.'s best interest. Judge Witte stated:

> "I have no reason to believe that Mrs. Robb would not help her client [K.M.B.] present all the information and all of her, and her position as to the best she may, and if she wants to make a different recommendation that's certainly her professional responsibility and obligation."

Judge Witte refused to replace Robb as K.M.B.'s counsel. He did, however, appoint counsel for K.M.B.'s mother and father and continued the dispositional proceeding for a later hearing.

At the second dispositional hearing, the State introduced into evidence a predispositional hearing report of juvenile court officer Diane McKimmey. In her report, McKimmey evaluated K.M.B.'s entire background including the condition of K.M.B.'s mother's home. K.M.B.'s mother is single and unemployed. She lives with three of her children—including K.M.B.—in Bloomington, supports herself and the children with Aid to Dependent Children payments, and receives no child support from K.M.B.'s father.

McKimmey noted that DCFS had received numerous complaints concerning the mother's residence. Those complaints included: loud parties into the early morning hours, underage drinkers, the uncleanliness of the home, and the number of residents in the home who are not members of the mother's family. McKimmey expressed her concern that K.M.B.'s mother did not provide an adequate parental role for K.M.B. McKimmey recommended that K.M.B. be placed in the Salem Children's Home.

At the end of the hearing, Robb told the court that K.M.B. desired to remain in her mother's home. Robb then continued:

> "I don't think that there's any question that placement is necessary at this time. I think that this situation has just deteriorated to such a degree that to keep the Minor in this *** type of living situation *** we are doing an extreme disservice

to her \*\*\*. I certainly believe that \*\*\* the factors which have caused the situation \*\*\* are certainly as a result of many, many factors, unemployment of [K.M.B.'s mother], no support provided by [K.M.B.'s father], having to deal with a number of children on a very little income, trying to work, provide, be a single parent, and deal with someone, with a child who has obviously some serious problems which affect her ability to learn and her ability to interact with other individuals, \*\*\* I don't think any person is to blame as much as the environment and economic situation are the cause and factor.

I just don't see any other solution than placement \*\*\* in a very structured situation where there is a reinforcement of things taught in a school, in the living environment in order to try and address the deteriorating situation which is occurring in her home."

Judge Witte then ordered Juvenile Court Services to assume guardianship of K.M.B. and to place her in the Salem Children's Home.

## THE LAW

On appeal, K.M.B. argues that she was denied her constitutional right to counsel because her attorney, Robb, recommended placement outside of the home even though she, K.M.B., desired to stay in her mother's home. We cannot agree.

The seminal case on a minor's right to counsel is *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428. In *Gault*, the United States Supreme Court found that the due process clause of the fourteenth amendment to the United States Constitution requires that juveniles be represented by counsel during proceedings to determine delinquency.

The responsibility of the court-appointed juvenile counsel, however, is different than that of other court-appointed counsel. The juvenile counsel must not only protect the juvenile's legal rights but he must also recognize and recommend a disposition in the juvenile's best interest, even when the juvenile himself does not recognize those interests. As our supreme court stated in *In re Beasley* (1977), 66 Ill. 2d 385, 389, 362 N.E.2d 1024, 1026:

"Although such a proceeding [under the Juvenile Court Act] retains certain adversary characteristics, it is not in the usual sense an adversary proceeding, but it is one to be administered in a spirit of humane concern for and to promote the welfare of the minor as well as to serve the best interests of the community."

The United States Supreme Court in *Gault* explicitly recognized the unique role of the juvenile's counsel:

> "Recognition of the right to counsel involves no necessary interference with the special purposes of juvenile court procedures; indeed, it seems that counsel can play an important role in the process of rehabilitation." *In re Gault* (1967), 387 U.S. 1, 38 n.64, 18 L. Ed. 2d 527, 552 n.64, 87 S. Ct. 1428, 1449 n.64.

It is not always possible for a juvenile's counsel to carry out his unique responsibility to protect the juvenile's best interest without alienating the juvenile. A delinquent juvenile's wishes are often not in his best interest. Although the juvenile's counsel should consider the juvenile's wishes and inform the court of those wishes, the counsel has an obligation to protect the juvenile's best interest. If protecting a juvenile's best interest requires that the counsel make a recommendation contrary to the juvenile's wishes, then the counsel has, as Judge Witte stated, a "professional responsibility and obligation" to make that recommendation.

In the present case, Robb did exactly that. She considered K.M.B.'s wish to remain in her mother's home and she informed the court of K.M.B.'s desire. Then after considering the juvenile court officer's report, Robb stated that in her opinion it was in K.M.B.'s best interest to be placed in a structured home instead of remaining with her mother. Robb then recommended that K.M.B. be placed in the Salem Children's Home.

Robb's recommendation did not deprive K.M.B. of her right to counsel. Instead, the record reveals that Robb's recommendation was based on her professional evaluation of K.M.B.'s best interest and indicates to us not only that K.M.B. received counsel but that she received very conscientious counsel.

Attorney Robb, in fact, is to be highly commended.

Affirmed.

TRAPP and MILLER, JJ., concur.