618 N.E.2d 729 (1993)
248 Ill. App.3d 971
188 Ill.Dec. 159
In the Interest of A.W., a Minor (The People of the State of Illinois, Petitioner, Frances W., Respondent).
No. 1-92-3173.
Appellate Court of Illinois, First District, Sixth Division.
June 18, 1993.
As Modified on Denial of Rehearing July 30, 1993.
Patrick T. Murphy, Lee Ann Lowder, Office of the Cook County Public Guardian, Chicago.
Barry A. Miller, Barbara S. Shulman, Diane F. Klotnia, Miller, Shakman, Hamilton Diane Geraghty, Loyola University School of Law.

MODIFIED UPON THE DENIAL OF REHEARING
Presiding Justice McNAMARA delivered the opinion of the court as modified upon the denial of rehearing:
Pursuant to Supreme Court Rule 308, on the basis that there was a substantial *730 ground for a difference of opinion, we granted leave to Patrick T. Murphy, Cook County Public Guardian, to appeal the juvenile court's grant of a motion allowing A.W., a 13-year-old minor, to substitute private counsel in his place, in an abuse and neglect proceeding. On March 24, 1986, the Public Guardian was appointed as guardian ad litem and attorney for A.W., following an adjudication of wardship wherein the Department of Children and Family Services ("DCFS") was granted temporary custody. DCFS placed A.W. in the custodial care of her maternal grandmother, with whom she has lived until the present time.
The sole issue before this court is whether the juvenile court erred when it granted A.W.'s motion to substitute the law firm of Miller, Shakman, Hamilton & Kurtzon as attorney in place of the Public Guardian in the pro bono representation of A.W. Under the order, the Public Guardian continues to act as guardian ad litem for A.W. (The Public Defender has submitted a brief in this cause on behalf of A.W.'s mother, and several public interest groups also filed an amici curiae brief in favor of the juvenile court's ruling. However, the substance of the arguments presented in the amici brief does not address the issue before us. Consequently, we will not consider the amici curiae brief in our review of the issues.)
In March 1986, A.W., age six, reported that she had been sexually abused by her stepfather from the time she was two and one-half years old. A.W. had told her mother on several occasions that her stepfather had been touching her "private parts" and that he had put his penis inside her, but her mother refused to believe her. On March 4, 1987, the stepfather was convicted of aggravated criminal sexual assault and criminal sexual assault of A.W., and was sentenced to a term of eight years' imprisonment. His conviction was affirmed by this court on appeal. People v. Watson (1989), 178 Ill.App.3d 796, 127 Ill. Dec. 929, 533 N.E.2d 1011.
While the stepfather was incarcerated, A.W. and her mother participated in therapy at the Human Effective Living Program ("H.E.L.P."). The staff therapist recommended that A.W. remain in the custody of her maternal grandmother, have no contact with the stepfather, and have only supervised visits with her mother. In the counseling report, the therapist noted that the mother did not believe her husband had abused A.W. DCFS subsequently terminated the therapy at H.E.L.P. and transferred her to another therapist at Salem House due to "concerns of the mother."
Upon his release from prison on November 2, 1990, the stepfather returned to live with A.W.'s mother and brother in the family residence. The social worker at Salem House noted that his return to the family seemed to have a profound effect on the mother because during the period of incarceration she began to accept the possibility that A.W. may have been sexually abused by her husband. However, upon his release from prison, the mother reverted to her previous stance, and believed that A.W. had lied about the sexual abuse in an attempt to receive more maternal attention. The therapy at Salem House was terminated on January 31, 1991, and the case was transferred back to H.E.L.P. because Salem House could not provide sex offender treatment for the stepfather.
When H.E.L.P. also proved unable to provide service to the stepfather, the case was transferred by DCFS to the Community Mental Health Council. The case manager noted that the mother remained in denial that her husband had molested her daughter, and that she appeared more empathetic toward her husband than to A.W. The stepfather also maintained that he was not guilty, and believed that he had been falsely charged and convicted by improperly procured evidence. The therapist recommended that the stepfather attend family group therapy focusing on his sexual abuse of A.W., and that he attend group therapy for sexual offenders three times per week. While he did attend group therapy, he did not attend the prescribed sex offenders' therapy sessions.
On December 19, 1991, the court ordered an unsupervised day visit by A.W. on *731 Christmas Day with her mother and stepfather. Following the visit, the court ordered the family to participate in a joint therapeutic family counseling session with counselor Pamela Goodson, prior to December 31, 1991. Should Goodson so recommend, the parties were permitted an unsupervised overnight visit for New Year's day. These visits transpired without incident. On January 29, 1992, over the objection of the Public Guardian, the court granted the mother's motion for unsupervised overnight visits on alternating weekends for A.W. during February 1992.
On March 5, 1992, Goodson submitted a report to the court recommending that A.W. begin weekly unsupervised visitation commencing in March. Assuming the success of those visits and subsequent therapeutic sessions, Goodson recommended that A.W. return home by June 1992. Goodson believed that A.W.'s anxiety "decreased tremendously as her visits with family increased" and that her level of comfort with her stepfather is "more than adequate for a successful transition back into the family unit."
Ellen Epstein, the assistant Public Guardian assigned to represent A.W., objected to the acceleration of unsupervised visits. She believed that A.W. would not be protected because both parents were in denial that she had been sexually abused, and the stepfather refused to participate in treatment for sex offenders.
A.W. became upset when unsupervised visitation was terminated in late March. In a letter to the judge dated March 27, 1992, A.W. stated:
"... I am very unhappy about not visiting my mom, dad and brother. Ellen Epstein [Public Guardian] is a great person but she is not doing what I really want and that is to be at home with my family."
Goodson's supervisor, Denise Snyder, met with Denise Kane, the Associate Director of the Citizens Committee On The Juvenile Court, and discussed the possibility of A.W. obtaining other representation. Thereafter, A.W. telephoned Barbara Shulman, an attorney associated with Miller Shakman, and told her that the Public Guardian was advocating a position contrary to her direction, and that she had repeatedly asked that office to advocate for visitation with her parents.
On April 21, 1992, a motion for substitution of counsel was filed in which Miller Shakman argued that it was A.W. who selected the firm to act as her counsel, and that she had an absolute right to choose her own attorney. The Public Guardian argued that while there is "no question that the child is both mature and competent," she had been manipulated by others to seek the change in counsel. Acknowledging its responsibility to act in the "best interest" of the child, the court ordered that a hearing be conducted to determine whether A.W. was coerced into making the motion for substitution of counsel.
In opening statement at trial, the Public Guardian stated that in many cases, the office of the Public Guardian would "step aside and gladly welcome the offer of additional counsel" both as lawyer and guardian ad litem. However, under the factual circumstances in this case, in which the therapist, mother and attorney conspired to coerce and manipulate the minor into changing counsel, the Public Guardian believed that he was the appropriate party to represent A.W.
At the evidentiary hearing, Shulman testified that she was first contacted by A.W., and that she made no promises regarding benefits she could obtain for her in the case. Denise Kane of the Citizens Committee On The Juvenile Courts testified that during March 1992 she had several conversations with Denise Snyder, a supervisor with the Community Mental Health Council. Snyder told Kane that A.W. was depressed because she felt that her viewpoint was not being represented, and that she really did want visitation to continue. Kane suggested to Snyder that she ask A.W. whether she wanted another lawyer to represent her. She suggested that the therapist, Goodson, present this option to A.W. If A.W. really wanted another attorney, *732 Kane would try to find someone to represent her on a pro bono basis.
Pamela Goodson testified that she became A.W.'s therapist in the summer of 1991. She suggested to A.W. that she might want to seek alternative counsel pursuant to her supervisor's suggestion. Goodson telephoned Shulman, and made arrangements for A.W. to meet with Shulman.
Doctor Alan Ravitz, a child psychologist, was called as a witness by the Public Guardian, and opined that in the overwhelming majority of situations, a 12 year-old child does not have the capacity to choose an attorney. Doctor Ravitz stated that children of that age are psychologically immature, have a tendency toward impulsivity and have difficulty understanding the implications of their decisions. Too, children of this age have difficulty assessing the future results of immediate decisions due to their inability to defer gratification. Doctor Ravitz, however, had never interviewed A.W., and his opinion was not based upon the facts in this case.
The judge interviewed A.W. to ascertain her state of mind and mental condition, and whether she did want to retain substitute counsel. A.W. told the judge that she wanted Shulman to replace Ellen Epstein, one of the attorneys in the Office of the Public Guardian.
Thereafter, the judge granted the motion for substitution. The judge concluded that the evidence presented was not sufficient to show coercion or manipulation. Parenthetically, the judge noted that the Public Guardian would continue to act as guardian ad litem, and that his strong voice would still be heard on the ultimate issue in this case, which concerned the best interest of the minor.
The only question before us, which is one of first impression in Illinois, is whether A.W. may obtain counsel of her own choice in lieu of the Public Guardian. Miller Shakman does not request compensation, and is ready to represent A.W. pro bono.
We find it instructive to first conduct a review of the procedural due process rights accorded to minors pursuant to the Juvenile Court Act of 1987. (Ill.Rev.Stat.1991, ch. 37, par. 801-1, et seq.)] Section 801-5(1) sets forth the rights of the minor to representation during juvenile proceedings:
"... [T]he minor who is the subject of the proceeding and his parents, guardian, legal custodian or responsible relative who are parties respondent have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, although proceedings under this Act are not intended to be adversary in character, the right to be represented by counsel.
* * * * * *
No hearing on any petition filed under this Act may be commenced unless the minor who is the subject of the proceeding is represented by counsel." Ill.Rev. Stat.1991, ch. 37, par. 801-5(1).
As stated in the prefatory provisions of the Act, the procedural rights assured to minors "shall be the rights of adults, unless specifically precluded by laws which enhance the protection of such minors." (Ill.Rev.Stat.1991, ch. 37, par. 801-2(3)(a).) When these two sections are read together in a related manner, we find A.W.'s right to representation as a minor is clearly established, and that the right to representation afforded to minors is almost coextensive to that afforded to adults. We also observe that in Yellen v. Bloom (1945), 326 Ill.App. 134, 61 N.E.2d 269, this court held that a minor may engage private counsel in a civil case, and may make a valid contract by himself or through his next friend to hire an attorney to prosecute an action for injuries to a minor.
The United States Supreme Court has addressed the scope of procedural rights afforded to minors in various contexts. With respect to juvenile delinquency proceedings, the Court found that minors are entitled to adequate notice, the assistance of counsel, and the opportunity to confront their accusers. (In re Gault (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527.) As *733 expressed by the Supreme Court in Gault, "whatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." In re Gault, 387 U.S. at 13, 87 S.Ct. at 1456, 18 L.Ed.2d at 538.
Other jurisdictions have also analyzed the issue of whether the court is obligated to respect the wishes of minors with respect to their choice of representation. In Wagstaff v. Superior Court, Family Court Division (1975), 535 P.2d 1220, the Supreme Court of Alaska rejected the theory that the parents should choose the juvenile's attorney since they would be monetarily liable, and that a juvenile had no capacity to contract for the attorney's services. The Wagstaff court held that the child may retain the attorney of his choice or, alternatively, ask the court to appoint an attorney for him. The court cautioned that in instances where the child has retained counsel, the court should respect the child's choice.
In a case factually analogous to the present case, the California Appellate court held that a minor initially represented by appointed counsel is entitled to seek substitution of retained counsel for dependency related hearings in order to effect the right to counsel of the minor's "own choice." (Akkiko M. v. Superior Court (1985), 163 Cal.App.3d 525, 209 Cal.Rptr. 568.) In Akkiko, the court construed the relevant statute, which provided that a minor "has the right to be represented ... by counsel of his or her own choice" as imposing a duty upon the court to consider the minor's capacity to select counsel as well as the competence of counsel. The Akkiko court held that the trial court was obligated to honor the minor's choice of counsel, if the minor was competent to choose, and selected competent counsel.
As support for his position that an attorney who represents a child must advocate the position he believes to be in the child's best interest, the Public Guardian relies upon this court's decision in In Interest of K.M.B. (1984), 123 Ill.App.3d 645, 78 Ill. Dec. 917, 462 N.E.2d 1271. In K.M.B., this court held that although the juvenile's counsel should consider the juvenile's wishes and inform the court of those wishes, counsel has an obligation to protect the juvenile's best interest. The Public Guardian warns that allowing the motion for substitution would "simply parrot the child's wishes" which often may not be in the child's best interest.
We are unpersuaded by the argument presented by the Public Guardian. We point to the significance of the fact that it is within the purview of the judge, and not the attorney, to assess the evidence and determine placement which truly reflects the child's best interest. In child custody hearings under the Juvenile Act, the best interest of the child is the standard, and the trial court is vested with wide discretion. (In Interest of W.B. (1991), 213 Ill. App.3d 274, 157 Ill.Dec. 101, 571 N.E.2d 1120; In re J.K.F. (1988), 174 Ill.App.3d 732, 124 Ill.Dec. 375, 529 N.E.2d 92.) The trial court's opportunity to observe the demeanor and conduct of the parties must be given great weight. (In Interest of W.B.; In re J.K.F.)] Moreover, this court has held that juvenile counsel and the guardian ad litem have essentially the same obligations to the minor and to society. In Interest of R.D. (1986), 148 Ill.App.3d 381, 101 Ill.Dec. 890, 499 N.E.2d 478.
We recognize that a minor's right to select substitute counsel is not absolute. However, in the present case, the judge conducted an extensive hearing, with both sides presenting evidence to address the issue of whether A.W. was coerced or manipulated into the decision to substitute private counsel for the Public Guardian. After hearing the evidence and interviewing A.W., the judge found insufficient evidence to support the Public Guardian's assertion that the decision to change counsel was not a volitional act made by A.W. As conceded by the Public Guardian prior to trial, A.W. was found to be mature and competent. We conclude, therefore, that the juvenile court did not err when it granted the motion for substitution of counsel.
We emphasize that nothing stated in this opinion suggests what the proper *734 placement for A.W. should be. Nor do we hold, as the Public Guardian claims, that at the placement hearing Miller-Shakman is restricted to a mere parroting of A.W.'s views. The juvenile court shall conduct that hearing, with all parties present and participating fully, with one result in mind, the best interests of the minor child.
For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.
Judgment affirmed.
EGAN and GIANNIS, JJ., concur.