SECOND DIVISION

Nos. 1-07-2991 and 1-07-3053
Consolidated

| | |
|---|---|
| *In re*: | ) Appeal from the |
| | ) Circuit Court of |
| TASHA L.-I., a Minor, | ) Cook County, Illinois, |
|     Respondent-Appellee | ) Juvenile Justice and Child |
| | ) Protection Department, |
| (The People of the State of Illinois, | ) Child Protection Division |
|     Petitioner-Appellee, | ) |
| | ) |
| v. | ) |
| | )) |
| Nancy L., | )) |
|     Respondent-Appellant, | )) |
| | )) |
| and | |
| | Honorable |
| Bruce I., | Lawrence Flood, Judge |
|     Respondent-Appellant). | Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

In this consolidated appeal, respondents Bruce I. and Nancy L. appeal from the

circuit court's order awarding private guardianship of their daughter Tasha L.-I. to foster

parents. On appeal, respondents raise numerous contentions of error. We affirm.

BACKGROUND

Respondents Bruce I. and Nancy L. are Tasha L.-I.'s parents. Bruce and Nancy

were married in 1992 and Tasha was born on August 20, 1994. On September 20, 2004, the State filed a petition for adjudication of wardship of Tasha, then age 10, alleging an environment injurious to her welfare and substantial risk of physical injury, on the basis that both Bruce and Nancy had a history of alcoholism and domestic violence. A temporary custody hearing order was entered the same day, and a Department of Children and Family Services (DCFS) guardianship administrator, with the right to place Tasha, was appointed. The Cook County public guardian was appointed as both attorney and guardian *ad litem* for Tasha. Tasha was placed in the custody of foster parents, her maternal uncle and aunt, Glenn Y. and Linda Y. According to a stipulation of facts, entered only for the purpose of the temporary custody hearing, Nancy admitted that on September 4, 2004, she was too intoxicated to care for Tasha and she drove while intoxicated with Tasha in the car, with Bruce's knowledge. A permanency order, with a goal of return home within 12 months, was entered on March 28, 2005. The permanency goal remained return home until August 29, 2006, when it was changed to private guardianship. On April 26, 2007, DCFS filed a motion to vacate guardianship, terminate wardship and close Tasha's case. On October 18, 2007, the circuit court found that it was in Tasha's best interests to award private guardianship to the foster parents. On that date, the court granted DCFS's motion to vacate guardianship, terminate wardship, and close the case. Bruce and Nancy filed separate appeals from the court's order. Their appeals were consolidated.

August 29, 2006, Permanency Hearing

2

At the hearing, Dr. James Scherrer testified that he was the program director of the adolescent foster care program at Catholic Charities and stated that Tasha was receiving treatment for adjustment disorder. Her adjustment disorder resulted from living with parents with a substance abuse problem, which created problems in Tasha's adjustment and functioning. Tasha also attended Alateen meetings, which helps teens cope with the effects of living with someone with an alcohol abuse problem. He noted that Tasha was also performing well in school.

Dr. Scherrer also stated that Nancy and Bruce were receiving couples counseling and had recently become more responsive to therapy. Nancy had been compliant with weekly urine drops. However, in June or July of 2006, a caseworker who spoke to Nancy on the telephone suspected that she had been using alcohol and an inpatient alcohol treatment program was recommended for her. A report from the Stepping Stones program indicated that Nancy's excessive evasiness and inconsistencies showed that she could be in denial and in need of substance abuse treatment. In June 2006, Dr. Scherrer learned that Nancy had been arrested for driving under the influence (DUI) in October 2005, which Nancy had failed to disclose. In July 2006, Nancy had a psychological evaluation, which recommended that she should attend both individual and marital counseling. The evaluation noted that Nancy was making good progress in family therapy.

Dr. Scherrer also stated that Bruce attended Alcoholics Anonymous (AA) meetings and couples counseling and submitted to random urine drops. Bruce

completed an anger management program, but not the recommended program, and he had been absent from the program for several months. Bruce only completed part of a psychological evaluation because he refused to complete the entire evaluation. The evaluation report indicated that Bruce had many attributes of a narcissistic personality disorder and noted that he blamed Nancy for the removal of Tasha from their home.

On cross-examination, Dr. Scherrer stated that Bruce had been compliant with attending weekly AA meetings since January 2006. Bruce completed parenting classes in May 2006. He completed 75 hours of intensive outpatient drug and alcohol treatment and completed 25 hours of basic outpatient follow-up treatment. Bruce and Nancy's couples counseling began in March 2006, and even though they initially had some difficulty communicating, their level of cooperation has increased significantly. Dr. Scherrer admitted that the recommended anger management program was in the far north suburbs, which was quite a distance from Bruce's home in Chicago Heights. He noted that the anger management program that Bruce attended was not sufficient because it was only 12 to 18 weeks in duration, and Bruce only attended 6 of the sessions. He further stated that Bruce occasionally tested positive for opiates; however, it might have been due to the back pain medication Bruce was taking.

On redirect examination, Dr. Scherrer stated that Bruce still had not attended an inpatient alcohol treatment facility, which was one of the recommended services for him.

Patricia Green testified that she had been Nancy's Treatment Alternatives for a

4

Safer Community (TASC) recovery coach since June 2005. She stated that she had no concerns regarding Nancy's veracity with regard to her sobriety. She also noted that in addition to Nancy's DUI in 2005, Nancy had a prior DUI about five years ago.

A copy of the report from the initial counseling assessment for Bruce was admitted into evidence. The report indicated that a formal mental status evaluation interview could not be conducted because of Bruce's resistance and reluctance to share personal information. Bruce's attitude was uncooperative and irritable and he walked out of several sessions when he became upset. Bruce complained that he should not have to be involved in services because the current involvement with DCFS was Nancy's responsibility. He also indicated that domestic violence and parental substance abuse had only a minimal impact on Tasha.

A report from Tasha's therapist was published in the record. It recommended that Tasha not be returned to her parents' care at that time. The report noted that both parents needed to engage in ongoing substance abuse treatment and accept responsibility for their role in the removal of their child. The report concluded that it would be extremely detrimental to return Tasha to the care of her parents prior to these issues being addressed adequately.

A report from the initial counseling assessment for Nancy noted that she should explore the dissolution of her relationship with Bruce in order to regain custody of Tasha. The report stated that Nancy and Bruce were negative influences on each other, which frequently led to domestic violence.

5

Tasha's foster parents testified that Tasha was doing well at school and maintained a B average. They stated that Tasha was conflicted because she loved and missed her parents.

The guardian noted to the court that it was very clear that Tasha did ultimately want to live with her parents. However, the guardian argued that the permanency goal should be changed from return home to private guardianship because two years had passed since the case had been in the system and the parents had not even progressed to the point of unsupervised visits.

The court determined that the appropriate goal was private guardianship. The court stated that a goal of return home was not appropriate because neither of the parents had made substantial progress.

### 2007 Permanency Hearing

At the hearing, the DCFS service plan of February 26, 2007, was admitted into evidence. The plan noted that Bruce and Nancy needed mental health services and Bruce was described as having an extensive history of alcohol abuse.

Dr. Scherrer testified that he had a conversation with Tasha in May 2007, in which Tasha told him that she wanted to return home to her parents. She knew there was a conflict between her parents and her foster parents and hoped that the two families could work together. She realized that she probably would not be able to return home at that time, but it was something she wanted to do in the future. Dr. Scherrer agreed that the most appropriate goal for Tasha was guardianship with her foster

parents because of the likelihood of a relapse by the parents.

Jennifer Gibson, a pre-doctoral clinical psychology intern at Advocate Family Care Network, testified that she had been providing individual therapy to Tasha since August 2006. Gibson noted that the guardian had reported to her that Tasha wanted to return home to Tasha's parents. Tasha indicated however, that if she could not return home, she would be comfortable living with her foster parents. Tasha had some concerns about where she would go to high school and it was important to her to have a stable living environment.

On cross-examination by Bruce's attorney, Gibson stated that she also provided individual therapy to Tasha's foster parents, but only with respect to those issues relating to Tasha.

The guardian introduced a letter written by Tasha into the record. The letter was dated December 12, 2006, and was addressed to the court and to others. Tasha stated in the letter that she liked living with her foster parents but she thought she should live with her parents. She got teased at school and was asked questions about whether her parents did drugs. She felt she was more popular when she lived with her parents. She hoped that the recipients of the letter knew how much she wanted to go home.

Former caseworker Carol Murphy testified that she was the caseworker from October 2006 until the end of May 2007. She agreed with the determination that private guardianship was the appropriate decision.

Following the hearing, the court determined that the permanency goal should remain as private guardianship because the parents had not made substantial progress in services. The court acknowledged that Tasha wanted to live with her parents but she also realized that they needed to do more services. The court noted that he found Tasha to be an "intelligent young lady."

**2008 Hearing on DCFS's Motion to Vacate Guardianship,
Terminate Wardship and Close the Case**

Caseworker Noelle Ossler testified that her agency was recommending that the foster parents become Tasha's legal guardians.

Foster mother Linda Y. testified that she would facilitate visitation between Tasha and her parents if she became Tasha's legal guardian. She admitted that Tasha had expressed a desire to return home to her parents. Linda Y. also stated that neither she nor her husband was in any type of therapy unrelated to this case. She denied placing significant restrictions on Tasha's contact with her parents.

Foster father Glenn Y. denied that he would restrict Tasha's contact with her parents if he became her legal guardian. He stated that he had done everything possible to permit Tasha to visit with her parents and family members. He admitted that Tasha would like to return home if the situation with her parents improved.

After the hearing, the court determined that it would be in Tasha's best interests that her foster parents be appointed as her legal guardians. The court stated that it had been a year-and-a-half since the date of adjudication and the parents had not made reasonable progress. The court noted the history of domestic violence between the

8

parents and also that Nancy was an alcoholic and that Bruce needed to accept responsibility for Tasha's removal from their home. The court stated that it had to look out for the best interests of Tasha, and the court acknowledged that Tasha wanted to be returned home to her parents. However, the court found that because there still continued to be problems with the parents, returning Tasha home would not be a good environment for her. The court granted DCFS' motion to vacate guardianship, terminate wardship and close the case.

ANALYSIS

Best Interests

On appeal, Nancy contends that the circuit court's order granting DCFS's motion to vacate guardianship, terminate wardship, and close the case was against the manifest weight of the evidence.[1] She argues that the best interest factors weigh in favor of finding that Tasha should live with her parents.

The Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-3(4.05) (West 2006)) provides that the following factors should be considered in determining the best interests of the child, within the context of the child's age and developmental needs:

"(a) the physical safety and welfare of the child, including food, shelter, health, and clothing;

(b) the development of the child's identity;

---

[1] Bruce concedes that the circuit court's determination of Tasha's best interests was not against the manifest weight of the evidence.

9

(c) the child's background and ties, including familial, cultural, and religious;

(d) the child's sense of attachments, including:

(i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel such love, attachment, and a sense of being valued);

(ii) the child's sense of security;

(iii) the child's sense of familiarity;

(iv) continuity of affection for the child;

(v) the least disruptive placement alternative for the child;

(e) the child's wishes and long-term goals;

(f) the child's community ties, including church, school, and friends;

(g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child."

705 ILCS 405/1-3(4.05) (West 2006).

Additionally, the court may consider the nature and length of the child's relationship with the present caregiver and the effect on the child's emotional and psychological well-being of a change in placement. In re Jaron Z., 348 Ill. App. 3d 239, 262 (2004).

A trial court's determination of what is in a child's best interests will not be reversed on appeal unless that determination is against the manifest weight of the evidence. In re Marriage of Parr, 345 Ill. App. 3d 371, 376 (2003). A decision is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings are unreasonable, arbitrary, and not based upon any of the evidence. In re Marriage of Main, 361 Ill. App. 3d 983, 989 (2005).

Specifically, Nancy first argues that because Tasha was 13 years old at the time the case closed, and because the court found her to be an "intelligent young lady," Tasha's express desire to return home to her parents should be given considerable weight. Second, Nancy argues that because both she and Bruce had made significant progress in the services that were provided to them, their home was a viable option for Tasha's placement. Third, Nancy maintains that Tasha should return home because Tasha's foster parents were not willing to adopt Tasha. Fourth, Nancy argues that Tasha's physical, mental and emotional well-being would be best served if Tasha was returned home because Tasha missed her parents and the separation has had a great impact on Tasha. Further, Nancy argues that the court failed to "meaningfully consider" all the applicable factors.

In determining that it was in Tasha's best interest to award private guardianship to her foster parents, the court noted that it had been a year-and-a-half since the date of adjudication and the parents had not made reasonable progress. The court noted the history of domestic violence between the parents and also that Nancy was an alcoholic and that Bruce needed to accept responsibility for Tasha's removal from their home. The court stated that it had to look out for the best interests of Tasha, and the court acknowledged that Tasha wanted to return home to her parents. However, the court found that because there still continued to be problems with the parents, returning Tasha home was not desirable.

Here, we do not find the trial court's determination to be against the manifest weight of the evidence. The court was aware of Tasha's wish to return home to her parents; however, the court determined that the parents' home was not appropriate because the parents had not made reasonable progress. The court was concerned that if Tasha returned home, it would have a detrimental effect upon her development and well-being. We find it important to note that the parents had not progressed to the point of being allowed to have unsupervised visits, so to return Tasha to her parents would not be supported by the evidence. The evidence also indicated that Tasha was doing well in her foster parents' care and was also doing well academically at school. The foster parents also indicated that they would cooperate to facilitate visits between Tasha and her parents. We disagree with Nancy's contention that the trial court did not "meaningfully" consider all the appropriate factors. When considering all the factors,

we find the trial court's best interest determination to be supported by the manifest weight of the evidence.

Evidentiary Matters

Next, Nancy contends that the court excluded relevant evidence when the court sustained objections to questions that would have elicited relevant information. Specifically, Nancy points to attempts to question caseworker Ossler about the relationship between the parents and foster parents, Tasha's plans to be confirmed in the Catholic faith, Tasha's issues over the loss of living with her parents, visitation issues and whether the case file contained any concerns about the foster parents becoming guardians. Bruce contends that the court erred in excluding evidence regarding contact between Tasha and her parents and issues pertaining to the foster parents' fitness.

Evidentiary rulings are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. In re L.W., 367 Ill. App. 3d 844, 857 (2006).

Here, we find no abuse of discretion. Each of the matters Nancy's and Bruce's counsel sought to question caseworker Noelle Ossler about was either beyond the scope of Ossler's direct examination, was not relevant to the court's best interest determination or called for speculation. The testimony at the hearing indicated that Tasha was doing well in the foster parents' home and that the placement was safe and appropriate. The foster parents had no mental illnesses and were not receiving any type of therapy other than counseling related to Tasha's placement in their home.

13

Regarding the issue of the parents' future visitation with Tasha, any testimony by the caseworker would have been speculative. Further, the court repeatedly advised the parties that if the parents were denied reasonable visitation with Tasha, they could petition the court for visitation so they were not without a remedy. The court heard testimony from numerous witnesses regarding the best interest factors and considered those factors in its determination to award private guardianship to the foster parents. We find no abuse of discretion in the court's exclusion of certain matters.

Bruce further contends that the court erred in refusing to allow his counsel to make offers of proof during the testimony of Noelle Ossler, the foster parents and Nancy.

The purpose of an offer of proof is to disclose the nature of the evidence offered to the trial judge and opposing counsel and to the reviewing court so that it may determine whether the exclusion of evidence was erroneous. Kankakee County Board of Review v. Property Tax Appeal Board, 316 Ill. App. 3d 148, 155 (2000). "'[A]n offer of proof is not required if it is apparent that the trial judge understood the nature of the objection and the character of the evidence sought to be introduced or if the questions themselves and the circumstances surrounding them show[ed] the purpose and materiality of the evidence.'" Schmitz v. Binette, 368 Ill. App. 3d 447, 454 (2006), quoting Carter v. Azaran, 332 Ill. App. 3d 948, 956 (2002).

Here, the court repeatedly informed counsel that an offer of proof was unnecessary because the information counsel sought to elicit from the witnesses was

either beyond the scope of direct examination or was not relevant to the court's best interest determination. Under these circumstances, the offer of proof was unnecessary. We find no abuse of discretion in the court's denial of counsel's requests to make offers of proof.

Bruce further argues that the court's denial of his discovery requests regarding the mental health of the foster parents was an abuse of discretion.

Here, there was testimony at the hearing that the foster parents were not in therapy other than counseling related to Tasha's care and both foster parents testified that they never had any mental health issues. The court characterized counsel's motion as a fishing expedition and noted that there was no evidence in the record that would indicate any mental health issues with the foster parents. We find no abuse of discretion.

Motion to Appoint Counsel

Next, Bruce argues that the circuit court erred in denying his motion to appoint counsel for Tasha. On May 2, 2007, counsel for Bruce filed a motion to appoint counsel for Tasha pursuant to section 1-5(1) of the Act (705 ILCS 405/1-5(1) (West 2006)). The motion alleged that there was a conflict of interest between Tasha and the guardian because Tasha wanted to return home to her parents but the guardian was advocating for private guardianship with the foster parents. The motion further alleged that because of this conflict, Tasha was, in effect, without her constitutional and statutory right to counsel.

Before ruling on the motion, the court took a brief recess to meet with Tasha. The court stated that during the meeting, Tasha indicated that she wanted to go home to live with her parents, but she also wished her parents would participate in the recommended services so that she could return home. The court did not ask Tasha about the guardian's representation of her interests and Tasha did not bring the issue to the court's attention. After the meeting, the court denied the motion to appoint counsel for Tasha.

Section 1-5(1) of the Act provides that a minor who is the subject of a proceeding pursuant to the Act has the right to be represented by counsel and that no hearing on any petition or motion filed under the Act may be commenced unless the minor is represented by counsel. 705 ILCS 405/1-5(1) (West 2006).

We agree with the court's denial of Bruce's motion to appoint counsel for Tasha and find the cases of In re K.M.B., 123 Ill. App. 3d 645 (1984), and In re A.W., 248 Ill. App. 3d 971 (1993), to be instructive. In K.M.B., the minor was involved in delinquency proceedings and was represented by an assistant public defender. The minor wanted to return home to live with her mother; however her attorney recommended that the minor should be placed in a juvenile home. The minor asked the court to allow the attorney to withdraw as counsel because their interests were in conflict, therefore depriving her of her constitutional right to counsel. The trial court denied the minor's request, and on appeal, this court affirmed. This court noted that a court-appointed attorney must not only protect the minor's legal rights but must also recognize and

16

recommend a disposition in the minor's best interest, even when the minor himself does not recognize those interests. K.M.B. 123 Ill. App. 3d at 647. The court further found that the attorney's actions were proper because she informed the court of the minor's desire to remain in the mother's home, but stated that it was her opinion that the minor should be placed in a juvenile home. K.M.B. 123 Ill. App. 3d at 648. Therefore, the court found that the attorney's recommendation did not deprive the minor of her constitutional right to counsel. K.M.B. 123 Ill. App. 3d at 648.

In A.W., the minor was removed from her home after she reported allegations of sexual abuse, for which the minor's stepfather was eventually convicted. Subsequently, the minor's counselor recommended unsupervised visits to the home after the stepfather returned to live at the home, to which minor's public guardian objected. The minor wrote a letter to the court informing the court that she was upset with the guardian's actions and that the guardian was not advocating for what the minor wanted. The trial court held a hearing to determine whether the minor wanted to obtain new counsel or whether the minor was coerced or manipulated into requesting new counsel. After the hearing, the trial court granted the minor's motion for substitution of counsel and this court affirmed on appeal. This court noted that while a minor's right to select substitute counsel was not absolute, the minor's desire to request new counsel was a result of her own volition and the trial court's order granting new counsel was appropriate. A.W., 248 Ill. App. 3d at 977.

We find instructive that in each case, the minors brought to the court's attention

17

that there was a conflict between the minor's desires and the court-appointed counsel's recommendations and that the minors wanted new counsel to represent their interests.

Here, we do not find those same facts present. Tasha's public guardian consistently informed the court that Tasha wanted to return home to her parents. Tasha also told the court that she wanted to return home but wished that her parents would participate in the recommended services so that she could return home. Tasha never expressed to the court that she was unhappy with the guardian's representation or that she desired new counsel. We further note that the petition for new counsel was brought by Bruce, not Tasha. We find that the circuit court did not err when it denied Bruce's petition for new counsel.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

SOUTH and HALL, J.J., concur.

1-07-2991 and 1-07-3053 consolidated

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

Nos. 1-07-2991 and 1-07-3053
Consolidated

| | |
|---|---|
| *In re*: | ) Appeal from the |
| | ) Circuit Court of |
| TASHA L.-I., a Minor, | ) Cook County, Illinois, |
|     Respondent-Appellee | ) Juvenile Justice and Child |
| | ) Protection Department, |
| (The People of the State of Illinois, | ) Child Protection Division |
|     Petitioner-Appellee, | ) |
| v. | ) |
| | ) |
| Nancy L., | )) |
|     Respondent-Appellant, | )) |
| and | )) |
| Bruce I., |     Honorable |
|     Respondent-Appellant). |     Lawrence Flood, Judge |
| |     Presiding. |

Nos. 1-07-2991 and 1-07-3053 consolidated

Appellate Court of Illinois
First District, Second Division

May 27, 2008

JUSTICE KARNEZIS delivered the opinion of the court.

SOUTH and HALL, J.J., concur.

Appeal from the Circuit Court of Cook County.

The Honorable John A. Ward, `Judge Presiding.`

19

---

For RESPONDENT-APPELLANT NANCY L., Edwin Burnette, Cook County Public Defender (Suzanne A. Isaacson, Assistant Public Defender, of counsel)

For RESPONDENT-APPELLANT BRUCE I., Stephen Jaffe, Chicago, Illinois

For MINOR-APPELLEE, Office of the Cook County Public Guardian, (Robert F. Harris, Kass A. Plain, Jean M. Agathen, of counsel)

For PETITIONER-APPELLEE, Richard A. Devine, Cook County State's Attorney, (James E. Fitzgerald, Jennifer Streeter, Assistant State's Attorneys, of counsel).