921 N.E.2d 1275 (2010)
In re A.W., JR., and A.W., Minors (The People of the State of Illinois, Petitioner-Appellee, v. P.W., Respondent-Appellant).
Nos. 3-09-0788, 3-09-0789.
Appellate Court of Illinois, Third District.
January 13, 2010.
*1276 Dana M. Kelly (Court-appointed), Peoria Heights, IL, for Respondent-Appellant.
Terry A. Mertel, Deputy Director, Kevin W. Lyons, State's Attorney, Nadia R. Chaudhry, State's Attorneys Appellate Prosecutor, for Petitioner-Appellee.
Timothy D. McCarthy (Court-appointed), Peoria, IL, for Guardian Ad Litem.
Justice CARTER delivered the opinion of the court:
The respondent-mother, P.W., appeals from the trial court's decision to bar her from calling her 15-year-old son, A.W., Jr., as a witness at the best interest hearing. The respondent argues that the trial court's decision to bar A.W., Jr.'s testimony violated her due process rights. We affirm.

FACTS
On March 28, 2006, the State filed a juvenile petition, alleging that the respondent's children, A.W., Jr., and A.W., were neglected by reason of an injurious environment. The trial court found that the State proved the allegations of neglect. On November 8, 2006, at the dispositional *1277 hearing, the trial court found the respondent fit and the father unfit but ordered that the children could not return home because the respondent was still residing with the father. The respondent appealed the trial court's dispositional order, which made the minors wards of the court and awarded guardianship to the Department of Children and Family Services. On appeal, this court held that the trial court's finding of neglect was against the manifest weight of the evidence and vacated the dispositional order. In re A.W., No. 3-06-0830 (2007) (unpublished order under Supreme Court Rule 23). The Illinois Supreme Court reversed the judgment of this court and affirmed the trial court's adjudication of neglect and dispositional order. In re A.W., 231 Ill.2d 241, 325 Ill.Dec. 194, 897 N.E.2d 733 (2008). Meanwhile, on April 11, 2007, the trial court had found that the respondent was dispositionally unfit for refusing to participate in any services, failing to visit with the children, and failing to communicate with the caseworker.
On March 6, 2009, the State filed a petition for termination of the respondent's parental rights. The petition alleged that the respondent was unfit pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1 et seq. (West 2008)) in that she failed to make reasonable progress toward the return of the children within the nine-month period following the adjudication of neglect, i.e., from October 6, 2006, to July 6, 2007. 750 ILCS 50/1(D)(m)(ii) (West 2008). On July 22, 2009, after a hearing, the trial court found the termination petition had been proven by clear and convincing evidence.
On August 12, 2009, Catholic Charities filed a best interest report indicating that in September 2007, both children had clearly stated that they did not wish to visit with the respondent. In October 2007, the respondent would not commit to a consistent visitation schedule and indicated she would postpone visitation until the next court hearing in March 2008. On November 15, 2007, the trial court granted the State's motion to suspend visitation. Also, the respondent made no attempt to comply with court-ordered services and did not make any effort to have the children returned to her care.
The best interest report also indicated that the respondent's 15-year-old son, A.W., Jr., had been placed in a transitional residential facility to receive the most intensive and appropriate services available for his needs. In therapy, A.W., Jr., gained insight into his negative behaviors and opened up about his anger and aggression, learning to apply anger management skills. A.W., Jr., was in the final phase of treatment and was preparing for placement into specialized foster care. The best interest report indicated, "[i]t is imperative that [A.W., Jr.,] continue to work on his issues in counseling in order for his behaviors and thought processes to remain stabilized as well as for him to appropriately step down into a specialized foster placement."
Further, the report stated that both children were in need of permanency. The report indicated that A.W., Jr., clearly stated that he wished to be adopted by a "real mom and dad that act like a mom and dad are supposed to act and love their children." A.W. clearly stated that she would like her foster mother, who was eager and willing to adopt A.W., to adopt her.
On August 19, 2009, the respondent's attorney requested a continuance of the best interest hearing in order to have A.W., Jr., testify. Upon information and belief, the State argued that the clinical director of A.W., Jr.'s residential facility and A.W., Jr.'s therapist believed that it *1278 would be detrimental for A.W., Jr., to testify and that he did not want to testify. The guardian ad litem (GAL) opposed A.W., Jr., being called to testify, opining that A.W., Jr.'s testimony would not be relevant beyond what the case history and reports had already indicated, especially in light of the fact that he had not seen his parents for quite some time. The GAL was also concerned that forcing A.W., Jr., to testify could undo progress that he had made in therapy and may have adverse mental and emotional effects.
In response, the respondent's attorney argued that as one of the best interest factors to be considered by the court, A.W., Jr.'s opinion was relevant. The trial court granted a continuance, ordered that the State provide a report supporting its position, and instructed the GAL to speak with A.W., Jr., and report to the court.
On September 9, 2009, the trial court received and reviewed an addendum report from Catholic Charities, a letter from A.W., Jr., and a report from the clinical director of A.W., Jr.'s transitional center. The addendum report indicated that the caseworker had worked with A.W., Jr., since 2006, and A.W., Jr., had clearly stated that he did not wish to maintain a relationship with his parents or see them at any time. A.W., Jr., was doing well in therapy regarding issues of abuse he reportedly endured at the hands of his parents and issues of self-esteem, anger, aggression, resentment, and depression. As of July 2009, A.W., Jr., had completed residential treatment and was ready to be placed with a foster family. Upon being notified of the possibility that he may testify at the best interest hearing, A.W., Jr., had increased anxiety and his behavior and grades declined significantly, with his progress in therapy declining. The letter from A.W., Jr., indicated that he was terrified to go back into the custody of his parents and that he never wanted to see them again.
In the clinical director's letter, the director indicted that A.W., Jr., had been a resident since July 7, 2008, and A.W., Jr., had revealed that his parents were physically and emotionally abusive. A.W., Jr., had a history of mood swings, defiant behavior, verbal threats toward others, suicidal ideations, substance abuse, and opposition to authority figures. A.W., Jr., was afraid to see his parents and wished to have no further contact with them. Since being informed of the best interest hearing, A.W., Jr.'s behaviors negatively changed and he threatened to run away. The clinical treatment team believed that it was not in A.W., Jr.'s best interest to have him testify at the best interest hearing.
In ruling, the trial court noted that A.W., Jr., was "already suffering emotionally just from the thought of * * * being part of [the] Best Interest Hearing" and that he would "suffer more emotional problems than he's already having" if he were forced to testify. The trial court denied the respondent's request for A.W., Jr., to testify.
On September 16, 2009, the best interest hearing took place. The State offered the best interest report into evidence. The GAL reported that A.W., Jr., told him that he did not want to see his parents and did not want to come to the Peoria area out of fear that he may see them. The trial court found that it was in the best interest of the children to terminate the respondent's parental rights. The respondent appealed.

ANALYSIS
On appeal, the respondent argues that the trial court's decision to bar her from calling A.W., Jr., to testify violated her due process rights. We disagree.
*1279 Parents have a fundamental due process right to the care, custody and control of their children, but that right is subject to termination. In re M.H., 196 Ill.2d 356, 256 Ill.Dec. 297, 751 N.E.2d 1134 (2001). Procedures involved in terminating parental rights must comply with the requirement of procedural due process. M.H., 196 Ill.2d 356, 256 Ill.Dec. 297, 751 N.E.2d 1134. Due process is not a technical concept unrelated to time, place, and circumstances, but is flexible and calls for such procedural protections as a particular situation demands. In re R.G., 165 Ill. App.3d 112, 116 Ill.Dec. 69, 518 N.E.2d 691 (1988).
Section 1-5 of the Juvenile Court Act of 1987(Act) entitles the respondent to certain rights, such as the right to be present, to be heard, to present evidence material to the proceedings, and to cross-examine witnesses. See 705 ILCS 405/1-5 (West 2008). Nonetheless, proceedings under the Act are not intended to be adversary in character. 705 ILCS 405/1-5 (West 2008). The primary concern is the best interest and welfare of the child. In Interest of E.L., 152 Ill.App.3d 25, 105 Ill.Dec. 288, 504 N.E.2d 157 (1987). Three factors to be balanced in determining whether a deprivation of a parent's due process rights occurred in termination proceedings are: (1) the private interests affected by the State's action; (2) the risk of an erroneous deprivation of that interest through the proceedings used, and the probable value of additional safeguards; and (3) the State's interest, including the function involved and the fiscal and administrative burdens that additional safeguards would entail. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); M.H., 196 Ill.2d 356, 256 Ill.Dec. 297, 751 N.E.2d 1134.
In applying the Mathews factors, we conclude that the respondent was not denied due process by the trial court's denial of her request to compel A.W., Jr., to testify. We find that the risk that the respondent was erroneously deprived of her fundamental right to the care, custody and control of her children was minimal when balanced against the State's interest in preserving the best interest of A.W., Jr.
Here, the respondent was afforded adequate procedural due process at the best interest hearing. The respondent had the opportunity to be heard and was able to explain her position, present evidence, and rebut the State's evidence. As such, the trial court's decision to prevent the respondent from compelling the testimony of A.W., Jr., did not restrict her from meaningfully participating in the proceedings.
Additionally, evidentiary rulings are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. In re Tasha L.-I., 383 Ill.App.3d 45, 321 Ill.Dec. 851, 890 N.E.2d 573 (2008); People v. Patrick, 233 Ill.2d 62, 330 Ill.Dec. 149, 908 N.E.2d 1 (2009). A trial court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. Patrick, 233 Ill.2d 62, 330 Ill.Dec. 149, 908 N.E.2d 1.
Here, eliciting the testimony of A.W., Jr., regarding his wishes was unnecessary. It was clear from the best interest report and from the GAL that A.W., Jr., did not wish to be reunited with the respondent nor did he want to see her. Furthermore, the record indicates that the children had practically no interaction with the respondent for over three years and the children were doing well in their current living environments. Thus, any testimony as to A.W., Jr.'s current relationship with the respondent would have been cumulative in that all the evidence indicated there was *1280 no current relationship between the children and the respondent.
Moreover, the respondent has failed to indicate what A.W., Jr.'s testimony could have added to her position. We cannot see how A.W., Jr.'s testimony would have any additional material relevance to the court's best interest determination. Consequently, the respondent was not prejudiced by the exclusion of A.W., Jr.'s testimony, as the exclusion did not materially affect the outcome of the proceedings. See In re April C., 326 Ill.App.3d 245, 260 Ill.Dec. 22, 760 N.E.2d 101 (2001) (error in excluding evidence is harmless if there has been no prejudice).
Overall, determining whether to place a child in the position to testify in a termination proceeding must be left to the discretion of the trial judge. The record indicates that the trial court's decision to exclude A.W., Jr., from testifying was based upon evidence that requiring A.W., Jr., to testify would be detrimental to his best interest. We can only imagine the stress and pressure placed on children that are requested to testify in this setting, the impact of which will undoubtedly affect them long-term. We simply cannot know the detrimental effects caused by placing a child in such a situation. We note that the trial court was required to administer the proceedings "in a spirit of humane concern[.]" See 705 ILCS 405/1-2(2) (West 2008). As such, the trial court did not abuse its discretion in excluding A.W., Jr.'s testimony, especially in light of the decision being made in the context of a best interest hearing. See In re D.T., 212 Ill.2d 347, 289 Ill.Dec. 11, 818 N.E.2d 1214 (2004) (the best interest hearing shifts the scrutiny of the court to the best interest of the child).
Based upon the facts and circumstances of this case, we find that the trial court did not deprive the respondent of her due process rights when it prevented her from compelling the testimony of A.W., Jr., at the best interest hearing.

CONCLUSION
Accordingly, the judgment of the circuit court of Peoria County is affirmed.
Affirmed.
SCHMIDT and McDADE, JJ., concurring.