# Illinois Official Reports

## Appellate Court

<div style="border: 1px solid black; padding: 10px;">

### *In re Shru. R.*, 2014 IL App (4th) 140275

</div>

| | |
|---|---|
| Appellate Court Caption | In re: Shru. R. and Shre. R., Minors, THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. SASHIKALA RAMACHANDRAN, Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-14-0275 |
| Filed | August 25, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order terminating respondent's parental rights to her two children was not against the manifest weight of the evidence, including evidence that respondent allowed the children to be sexually abused, that she returned to India without the children, and that the children were in a loving and safe home with foster parents who wanted to be a permanent part of the children's lives. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 12-JA-71; the Hon. Kevin P. Fitzgerald, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | John P. O'Brien (argued), of Robert Varney & Associates, of Bloomington, for appellant.<br><br>Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Kathy Shepard (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE TURNER delivered the judgment of the court, with opinion. Justices Holder White and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1    In July 2012, the State filed a petition for adjudication of wardship with respect to Shru. R. and Shre. R., the minor children of respondent, Sashikala Ramachandran. The trial court entered a temporary custody order granting custody to the Department of Children and Family Services (DCFS). In October 2013, the State filed a petition to terminate respondent's parental rights. In January 2014, the court found respondent unfit. In March 2014, the court found it in the minors' best interest that respondent's parental rights be terminated.

¶ 2    On appeal, respondent argues the trial court erred in terminating her parental rights. We affirm.

¶ 3                                I. BACKGROUND

¶ 4    In July 2012, the State filed a petition for adjudication of wardship with respect to Shru. R., born in 1997, and Shre. R., born in 2000, the minor children of respondent. The petition listed the minors' father, Ramachandran Rishnamoorthy, as being deceased in November 2010. The petition alleged the minors were abused pursuant to section 2-3(2)(iii) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(2)(iii) (West 2012)) in that respondent allowed Kankaraj Sheelam to commit sex offenses against the minors despite the minors' disclosure that the abuse was occurring. The petition also alleged the minors were abused pursuant to section 2-3(2)(v) of the Juvenile Court Act (705 ILCS 405/2-3(2)(v) (West 2012)) in that respondent inflicted excessive corporal punishment on at least one occasion by repeatedly striking Shre. R., causing her nose to bleed. The trial court found probable cause existed for the filing of the petition and placed temporary custody with DCFS.

¶ 5    In October 2012, the trial court found the minors were abused based on respondent repeatedly striking Shre. R., causing her nose to bleed. In its November 2012 dispositional order, the court found respondent unfit and unable to care for, protect, train, educate, supervise, or discipline the minors and placement with her was contrary to the health, safety, and best interest of the minors because she had been incarcerated since July 30, 2012, and had not been able to participate in recommended services. The court made the minors wards of the court and placed custody and guardianship with DCFS.

¶ 6    In December 2012, a jury found respondent guilty of permitting sexual abuse of a child (720 ILCS 5/11-9.1A(a) (West 2012)) in McLean County case No. 12-CF-701. In September 2013, defendant was sentenced to 48 months' probation.

¶ 7    In October 2013, the State filed a petition to terminate respondent's parental rights. The State alleged respondent was unfit because she failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West

2012)); (2) protect the children from conditions within their environment injurious to their welfare (750 ILCS 50/1(D)(g) (West 2012)); and (3) make reasonable progress toward the return of the minors to her within nine months after the adjudication of abuse (750 ILCS 50/1(D)(m)(ii) (West 2012)).

¶ 8   In January 2014, the trial court held a hearing on the State's petition. Respondent did not appear. The State indicated it would not pursue the reasonable-progress ground of unfitness. Cassidy Williams, formerly a case manager at Children's Home and Aid, testified she became involved with the minors' case in July 2012. It was recommended that respondent undergo counseling, but Williams stated respondent refused to admit any knowledge of the abuse of her daughter. Williams stated such an admission was important to foster visitation with the minors. Williams stated one of the minors told respondent about the abuse and that her response was that the minor had "to do things that you don't like to do," as it would lead to a better life in the United States and a college education.

¶ 9   Lindsey Libunao, a case manager at Children's Home and Aid, testified respondent did not show up for a child and family team meeting and a permanency hearing in October 2013. Libunao went to respondent's apartment and, upon entering via the unlocked door, found it empty save for a bucket and an umbrella. Libunao was able to confirm in November 2013 that respondent had left the United States and had gone to India. Libunao stated the minors consistently indicated their preference to stay in their current placement and she believed it would not be in their best interest to return to India.

¶ 10   Following arguments, the trial court found the State proved the allegations in its petition by clear and convincing evidence and found respondent unfit. The court then proceeded to the best-interest hearing.

¶ 11   The best-interest report indicated the minors were in the same foster home, where they are loved and appreciated. Both have formed strong bonds with their family and expressed a strong desire to stay in their care. The foster family has shown a commitment to providing a safe, loving, and nurturing environment for both minors.

¶ 12   Attached to the best-interest report was a document written by the minors' foster parents. Therein, they stated they were "committed to providing a permanent lifetime family" for the minors. However, they noted "the option of foster-to-independence is the only option that provides college education financial aid." Because of their financial situation and their desire for the girls to succeed in the long term, they asked for the opportunity to choose the foster-to-independence option. While noting Shre. R. was not eligible for this option, the foster parents asked that an exception be made so the same choice could be made for both minors. If the option was not available, they would like to become the minors' permanent legal guardians. If those two options were not available, they were willing to adopt the minors.

¶ 13   Kaitlin Kuhn, a sexual-abuse therapist, testified she became Shru. R.'s counselor in October 2012. Shru. R. had no desire to have a relationship with respondent. Kuhn stated Shru. R. felt secure in her foster home and has made relationships and attachments in the community. Kuhn also stated her belief that termination would have a positive impact on Shru. R. because it would provide needed security and certainty in her life.

¶ 14   Melissa Box, a sexual-abuse therapist, testified she became Shre. R.'s counselor in November 2012. Box stated Shre. R. was not surprised respondent returned to India. She was okay with having respondent's parental rights terminated and felt like it would take a weight off her shoulders. Box stated termination would provide Shre. R. with "closure and certainty"

in her life. She loves living with her foster family and wants to stay with them. Box stated the foster family does an "excellent job" helping Shre. R. participate in faith-based activities. Box stated Shre. R. has expressed love for her mother but does not feel safe with her.

¶ 15　Marianne Gross, the minors' foster mother, testified both girls indicated a desire to stay and attend college. She stated the girls have adjusted to the family and made "great strides" in becoming more stable.

¶ 16　David Gross, the minors' foster father, testified he is the associate pastor of student ministry at Grace Church. He stated he and his wife "love the girls very much" and they want to "provide a permanent family for them."

¶ 17　Shru. R. testified she is 16 years old. She stated her life is "filled with a lot of joy." She plays tennis, attends the Fellowship of Christian Athletes, and has her driver's permit. She wants to be a social worker and attend the University of Illinois. She has no interest in living with or seeing respondent.

¶ 18　Shre. R. testified she wants to stay with her foster family and loves them "very much." She does not want to live with respondent but would be okay visiting with her if she was not living in India.

¶ 19　After the hearing was continued, respondent's counsel indicated respondent had sent an e-mail expressing her love for the minors, stating she missed them, and hoping to be able to communicate with them via Skype. In counsel's argument, he stated respondent admitted she failed to protect the children.

¶ 20　In March 2014, the trial court found it in the minors' best interest that respondent's parental rights be terminated. The court appointed DCFS as guardian and ordered the permanency goal for the minors as guardianship. This appeal followed.

¶ 21　　　　　　　　　　　　　　II. ANALYSIS

¶ 22　In the case *sub judice*, respondent does not argue the trial court erred in finding her unfit. Instead, she argues the court erred in concluding it was in the minors' best interest that her parental rights be terminated. We disagree.

¶ 23　"Courts will not lightly terminate parental rights because of the fundamental importance inherent in those rights." *In re Veronica J.*, 371 Ill. App. 3d 822, 831, 867 N.E.2d 1134, 1142 (2007) (citing *In re M.H.*, 196 Ill. 2d 356, 362-63, 751 N.E.2d 1134, 1140 (2001)). "Even if a parent has been found unfit to have custody of a child, it does not necessarily follow that the parent cannot remain the child's legal parent with attendant rights and privileges." *In re M.S.*, 302 Ill. App. 3d 998, 1003, 706 N.E.2d 524, 528 (1999). However, once the trial court finds the parent unfit, "all considerations must yield to the best interest of the child." *In re I.B.*, 397 Ill. App. 3d 335, 340, 921 N.E.2d 797, 801 (2009). When considering whether termination of parental rights is in a child's best interest, the trial court must consider a number of factors within "the context of the child's age and developmental needs." 705 ILCS 405/1-3(4.05) (West 2012). These include the following:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least[-] disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need

for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072, 859 N.E.2d 123, 141 (2006).

See also 705 ILCS 405/1-3(4.05)(a) to (j) (West 2012).

¶ 24    A trial court's finding that termination of parental rights is in a child's best interest will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Anaya J.G.*, 403 Ill. App. 3d 875, 883, 932 N.E.2d 1192, 1199 (2010). A decision will be found to be against the manifest weight of the evidence in cases "where the opposite conclusion is clearly evident or where the findings are unreasonable, arbitrary, and not based upon any of the evidence." *In re Tasha L.-I.*, 383 Ill. App. 3d 45, 52, 890 N.E.2d 573, 579 (2008).

¶ 25    Here, respondent argues the trial court erred in its best-interest determination because there was no available adoptive placement for the minors. However, the minors' foster parents were a potential adoptive placement if other options were not available. Moreover, and as respondent admits, the lack of an adoptive placement does not *per se* require a finding that it is not in a child's best interest to terminate parental rights. In fact, and as the State points out, appellate courts have upheld findings that termination was in the child's best interest even though no adoptive home was immediately available. See *In re D.M.*, 336 Ill. App. 3d 766, 775, 784 N.E.2d 304, 312 (2002) (affirming termination by noting the trial court "properly concluded that the children's need for a long-term, stable relationship outweighed the necessity of an available adoptive home immediately upon termination of respondent's parental rights"); *In re Tashika F.*, 333 Ill. App. 3d 165, 170-71, 775 N.E.2d 304, 308 (2002) (affirming termination even though the likelihood of adoption was slim, since so was the likelihood the respondent could care for the minor); *In re B.S.*, 317 Ill. App. 3d 650, 665, 740 N.E.2d 404, 416 (2000) (stating, "[t]hough the current availability of an adoptive home is one of the considerations when deciding whether termination of a parent's rights is in the best interests of a child, it is not the only one"), *overruled on other grounds*, *In re R.C.*, 195 Ill. 2d 291, 304, 745 N.E.2d 1233, 1241 (2001).

¶ 26    The evidence in this case indicates the lack of an adoptive goal did not weigh against termination. As the above cases find, the lack of an adoptive home is only one factor to take into consideration, and "the better alternative" may be to give the children the permanency they need and deserve through continued involvement with the foster family, even if no adoption is available. See *B.S.*, 317 Ill. App. 3d at 665, 740 N.E.2d at 417. Here, the minors' foster family did not foreclose the possibility of adoption but sought different options in hopes of maximizing the minors' opportunity of receiving financial aid for college.

¶ 27    Respondent argues the trial court overlooked the progress she made and that she took responsibility for what transpired with the minors. She contends continuing her parental rights would not pose any harm to the minors in their current foster placement. She also argues termination of her parental rights was not necessary to maintain continuity and permanence for the minors.

¶ 28    Contrary to respondent's claims, she did not make progress during the history of this case. She refused to admit she knew about the abuse of the minors, even when told visitation and progress could not occur without the admission. After the State filed the termination petition, respondent disappeared without telling anyone, including the minors, whom she abandoned by returning to India. Her purported acknowledgment of responsibility only came via counsel's

argument at the best-interest hearing. Given respondent's decision to return to India, it is highly unlikely she would be able to return to the United States and be a part of the minors' lives in the near future. The minors deserve permanence in their lives, and having an absent mother halfway around the world would not provide the certainty and permanence they need.

¶ 29 In her final argument, respondent contends the minors' wishes and long-term goals, along with the preferences of the persons available to care for the children, were factors weighing against termination. Respondent states Shru. R. did not expressly state her desire to have respondent's parental rights terminated, despite not wanting contact with her. She points out Shre. R. expressed love for her mother and that she misses her. Shre. R. was open to contact with her mother in the future. Respondent also notes the foster parents did not consider adoption the best option.

¶ 30 We have already addressed the foster parents' reasons for not considering adoption the primary option for the girls. As for the minors, Shru. R. was clear she did not want any contact with respondent, even in visitation. Shre. R. testified she did not want to live with respondent and "might be okay with" future visits only if respondent was in the United States and taking part in her services. The evidence indicates the minors were thriving in a loving and safe home with foster parents who wanted to be in their lives on a permanent basis. Considering the totality of the evidence and the best interest of the minors, including their need for permanence and their stable lifestyle in their current placement, we find the trial court's order terminating respondent's parental rights was not against the manifest weight of the evidence.

¶ 31 III. CONCLUSION

¶ 32 For the reasons stated, we affirm the trial court's judgment.

¶ 33 Affirmed.