NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 190896-U

NO. 4-19-0896

FILED
May 12, 2020
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* T.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
| Petitioner-Appellee, | ) | No. 18JA10 |
| v. | ) | |
| Tracie H., | ) | Honorable |
| | ) | J. Brian Goldrick, |
| Respondent-Appellant). | ) | Judge Presiding. |
| | ) | |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The appellate court affirmed, holding the trial court did not err in terminating respondent's parental rights.

¶ 2        In January 2018, the State filed a petition for adjudication of neglect with respect to T.H., the minor child of respondent, Tracie H. In April 2018, the trial court adjudicated the minor neglected, made him a ward of the court, and placed custody and guardianship with the Department of Children and Family Services (DCFS). The State filed a motion to terminate respondent's parental rights in July 2019. Respondent admitted to being an "unfit person" within the meaning of Illinois's Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2018)). The court then held best-interests hearings in October and November 2019, where the court found it was in the minor's best interests to terminate respondent's parental rights.

¶ 3        On appeal, respondent argues the trial court erred in terminating her parental rights; specifically, she alleges the trial court's best-interest determination was against the manifest

weight of the evidence. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5         On January 29, 2018, the State filed a petition for adjudication of neglect with respect to T.H.—a minor child born to respondent mother on April 12, 2012—alleging the minor's environment was injurious to his welfare when he resided with respondent because of her unresolved issues of domestic violence, anger management, alcohol abuse, and/or substance abuse. The next day, at a shelter-care hearing, pursuant to respondent's stipulation of neglect and immediate and urgent necessity, the trial court issued an order placing temporary custody and guardianship of T.H. with DCFS.

¶ 6                              A. Adjudicatory Proceedings.

¶ 7         On March 13, 2018, the trial court issued an adjudicatory order, finding the minor abused or neglected as defined by the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2018)) in that the minor's environment was injurious to his welfare. The court accepted respondent's admission to a finding of neglect based upon her unresolved issues of domestic violence and/or anger management. In exchange for her admission, the court dismissed the State's allegation of neglect based upon her unresolved issues of alcohol abuse and/or substance abuse.

¶ 8         The trial court also issued a dispositional order on April 25, 2018, finding respondent, for reasons other than financial circumstances alone, to be unfit, unable, and unwilling to care for, protect, train, educate, supervise, or discipline T.H. and determining placement with respondent was contrary to T.H.'s health, safety, and best interest because respondent was "just getting started in services. She need[ed] to complete substance abuse, DV [(domestic violence)], individual counseling, and parenting classes. She need[ed] to obtain/maintain stable housing and

employment." The court granted the State's petition, adjudicated T.H. neglected, and made him a ward of the court. The court ordered DCFS to maintain custody and guardianship over T.H. DCFS placed T.H. in relative placement, eventually with his maternal cousin, Angela, in Country Club Hills, Illinois.

¶ 9                             B. Termination of Respondent's Parental Rights

¶ 10          On July 1, 2019, the State filed a petition to terminate respondent's parental rights. The State alleged she was an unfit person pursuant to Illinois's Adoption Act (750 ILCS 50/1(D) (West 2018)) and identified three grounds supporting its allegation. At the fitness hearing on September 4, 2019, respondent admitted to one ground; she failed to make reasonable progress toward the return of the minor to the parent during any nine-month period following adjudication of neglect, namely between October 1, 2018, and July 1, 2019 (750 ILCS 50/1(D)(m)(ii) (West 2018)). In its petition, the State also alleged termination of respondent's parental rights was in T.H.'s best interests and asked for custody and guardianship to remain with DCFS, giving it the authority to consent to T.H.'s adoption.

¶ 11          On October 23, 2019, the trial court held a best-interest hearing. Respondent was present with counsel. The State presented no testimony.

¶ 12          Respondent testified on her own behalf. She testified she had completed substance abuse and parenting services. As part of her substance-abuse classes, she implemented a relapse-prevention plan, which would include attending Alcoholics Anonymous (AA) meetings and talking to a sponsor. She said she attended AA once a week but had not begun the 12-step program. She had not secured a sponsor, but she was "[t]alking to one." She said the last time she consumed alcohol was in July 2019. When asked why she had missed "so many screens" since July, respondent said screens scheduled on Monday and Tuesday were "the hardest" for her because she

was usually "coming back from Chicago" (presumably visiting T.H.) and could not get there in time.

¶ 13  Respondent testified she was participating in domestic violence classes with an anticipated completion date in December 2019. She said she was learning to recognize "red flags" and how to take "better care of [her] son and [her]self." She also reported she was living in Bloomington with her daughter but was on a waiting list for her own housing. She thought she could be in her own home by December 2019. Respondent said she was employed part-time at Super JJ, earning approximately $363 biweekly.

¶ 14  Respondent testified she loved T.H. and would do anything for him. In her opinion, it was not in T.H.'s best interests to terminate her parental rights because she wanted her son "home with [her] where he belongs."

¶ 15  On cross-examination, respondent said she last visited T.H. three weeks ago. She typically visited twice a month. Respondent explained she was related to T.H.'s foster parent, Angela, and Angela's sister, Maria. Maria was waiting on approval to have T.H. placed in her home. Respondent said she had no concerns about T.H. being placed in either home. Respondent acknowledged the best thing for T.H. was to be in a stable, safe, and healthy environment.

¶ 16  The guardian *ad litem* called the caseworker, Jasmine Jackson, as a witness. Jackson explained that Angela was not an adoptive placement, but her twin sister, Maria, was willing to adopt T.H. Jackson was waiting on approval from a Chicago area agency before she could place T.H. with Maria, as Maria was a foster parent to other children. Jackson was asked if she thought it was in T.H.'s best interests to terminate respondent's parental rights despite his placement being "up in the air." Jackson replied affirmatively and explained, "[W]here he is now, there is a stable and safe environment and there's no environmental concerns and just where we

are at in this case with progress on the parent." Jackson acknowledged Angela was willing to care for T.H. in the interim for "as much time as it takes[.]" Angela and Maria were willing to allow respondent to maintain contact with T.H. as long as it would be in his best interests.

¶ 17 On cross-examination, Jackson testified that, if for some reason the agency did not consent, she would find "an adoptive and safe environment" for T.H. Jackson said respondent needed to complete domestic violence classes and obtain housing. Counsel asked Jackson if she would recommend a finding of fitness for respondent if respondent would complete those items. Jackson said, "I'm not sure at this time due to the fact that [respondent] has not been a hundred percent cooperative with the agency recommendations as far as random drug screens."

¶ 18 On redirect examination, Jackson testified she would want to see a long-term period of sobriety and clean drug screens from respondent—six months to a year. Jackson testified the foster children in Maria's home were T.H.'s nephews. Jackson indicated to the trial court that she was traveling to Maria's home on October 28, 2019, to view the residence. With this information, the court continued the hearing until after the scheduled visit.

¶ 19 On November 19, 2019, the hearing resumed. The trial court noted the filing of an updated best-interest report, which noted T.H. had been placed with Maria for four days, since November 15, 2019. The State informed the court that, since the last hearing, respondent had "no called/no showed" for a drug screen on October 30, 2019. Respondent called but did not show on November 6, 2019. She appeared on November 15 and 18, with those results pending.

¶ 20 After the arguments of counsel, the trial court indicated it had considered the evidence and the statutory best-interest factors. The court concluded the State had proved by a preponderance of the evidence that it was in T.H.'s best interest that respondent's parental rights be terminated.

¶ 21        This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23        Respondent argues the trial court erroneously terminated her parental rights because the court's best-interest determination was against the manifest weight of the evidence. We disagree and affirm the court's judgment.

¶ 24        The Juvenile Court Act (705 ILCS 405/1 *et seq.* (West 2018)) and the Adoption Act (750 ILCS 50/1 *et seq.* (West 2018)) govern the termination of a parent's rights to his or her child. *In re D.F.*, 201 Ill. 2d 476, 494 (2002). Together, the statutes outline two necessary steps in the process. The State must show the parent is an "unfit person" and that terminating parental rights serves the best interests of the child. *D.F.*, 201 Ill. 2d at 494-95 (citing the Adoption Act (750 ILCS 50/1(D) (West 1998) and the Juvenile Court Act (705 ILCS 405/2-29(2) (West 1998)). Here, respondent challenges only the trial court's best-interest determination.

¶ 25        Once a trial court finds a parent to be an "unfit person," it must then consider the child's best interests. "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004); see also *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 80 (stating, once the trial court finds the parent unfit, "all considerations, including the parent's rights, yield to the best interests of the child"). When considering whether termination of parental rights serves a child's best interests, the trial court must consider several factors within "the context of the child's age and developmental needs." 705 ILCS 405/1-3(4.05) (West 2018). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including

love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072 (2006); see also 705 ILCS 405/1-3(4.05)(a) to (j) (West 2018).

¶ 26 A reviewing court gives great deference to the trial court's decision because the trial court is in a much better position to see the witnesses and judge their credibility. *In re K.B.*, 314 Ill. App. 3d 739, 748 (2000). A court's finding that termination of parental rights is in a child's best interests will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 53. A best-interest determination is against the manifest weight of the evidence only if the facts clearly demonstrate the court should have reached the opposite result. *Daphnie E.*, 368 Ill. App. 3d at 1072.

¶ 27 Respondent contends the trial court did not have sufficient information on T.H.'s prospective adoptive placement to make a reasoned best-interest determination. She claims the court placed too much emphasis on the positives of T.H.'s placement in Maria's home when he had been there only four days. Further, respondent argues the court placed too little emphasis on her "nearly completed" services, her desire to parent her child, and her established bond with him.

¶ 28 Initially, we note the lack of established success of a potential adoptive placement does not weigh against termination in this case. T.H. had resided with Angela since June 2019 and

was reportedly doing well. Angela and her twin sister, Maria, the potential adoptive placement, were maternal relatives of T.H. The sisters live approximately five miles apart in the Chicago area. Each mother has their respective children in their homes, who were also maternal relatives of T.H. Maria was also a foster mother to other maternal relatives of T.H.

¶ 29 This court and other courts have held the lack of an adoptive placement does not *per se* require a finding that it is not in a child's best interest to terminate parental rights. *In re Shru. R.*, 2014 IL App (4th) 140275, ¶¶ 25-26; see also *In re D.M.*, 336 Ill. App. 3d 766, 775 (2002) (affirming termination by noting the trial court "properly concluded that the children's need for a long-term, stable relationship outweighed the necessity of an available adoptive home immediately upon termination of respondent's parental rights"); *In re Tashika F.*, 333 Ill. App. 3d 165, 170-71 (2002) (affirming termination even though the likelihood of adoption was slim, since so was the likelihood the respondent could care for the minor); *In re B.S.*, 317 Ill. App. 3d 650, 665 (2000), *overruled on other grounds by In re R.C.*, 195 Ill. 2d 291, 304 (2001) (stating, "[t]hough the current availability of an adoptive home is one of the considerations when deciding whether termination of a parent's rights is in the best interests of a child, it is not the only one").

¶ 30 As such, the focus of the best-interest determination should not necessarily center on the length of time T.H. had been in Maria's home. Nor should the court be concerned that it was without evidence of longevity regarding T.H.'s suitability in the home. The adoptive home was only one factor to take into consideration. At worst, if placement in Maria's home did not result in adoption, T.H. could reside with Angela until a suitable adoptive placement was found. See *B.S.*, 317 Ill. App. 3d at 665 (noting "the better alternative has to be taken," *i.e.*, "the better alternative was to give the children a chance for some permanency in their lives, even if that meant they were not adopted, but continued to have a secure and stable home environment with the foster

family they had been with for some years.").

¶ 31 Here, the trial court considered the evidence, the best-interest reports, and the statutory factors. Noting T.H. had been in alternate care for almost two years, the court remained concerned with respondent's ability to maintain sobriety and actually incorporate sobriety into her daily life. The court stressed T.H.'s need for stability and permanency and found that, because Maria's home had been monitored by another agency, it was reasonable to assume T.H. could achieve both there. It was also reasonable to assume T.H.'s basic needs would be met. He was surrounded by family and was thriving in the close familial environment. The court found these considerations weighed in favor of termination. Because the evidence does not lead us clearly to the opposite conclusion, we find the court's best-interests determination was not against the manifest weight of the evidence.

¶ 32                                     III. CONCLUSION

¶ 33 For the reasons stated, we affirm the trial court's judgment.

¶ 34 Affirmed.