NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220757-U

NO. 4-22-0757

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 23, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* L.S. and C.S., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
| Petitioner-Appellee, | ) | No. 18JA76 |
| v. | ) | |
| Crystal S., | ) | Honorable |
| Respondent-Appellant). | ) | J. Brian Goldrick, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Steigmann and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: Finding no issues of potential merit to support an appeal on the trial court's termination of parental rights, appointed counsel's motion to withdraw is granted and the trial court's judgment is affirmed.

¶ 2    Respondent, Crystal S., appeals from the trial court's judgment terminating her parental rights concerning her two minor children, L.S. (born in 2014) and C.S. (born in 2017). Counsel appointed to represent respondent on appeal now moves to withdraw as counsel, alleging that the appeal presents no issues of arguable merit. Proper notice was given to respondent, and ample opportunity was provided to file a written response to appointed counsel's motion.

¶ 3    We grant appointed counsel's motion to withdraw as counsel on appeal and affirm the judgment of the McLean County circuit court.

¶ 4                                    I. BACKGROUND

¶ 5        The minor children's father, Lester S., is not a party to this appeal and has filed a separate appeal in Fourth District case No. 4-22-0675.

¶ 6        In late July 2018, respondent was taken to the hospital for leg pain; while there, she tested positive for opiates, cocaine, and marijuana. It was also reported that respondent's husband (the minor children's father) abused cocaine. Because of the parents' "history of substance abuse, current use, and history of [Department of Children and Family Services (DCFS)] involvement due to substance abuse concerns," the children were removed from their care and placed in protective care.

¶ 7                                A. Adjudication of Wardship

¶ 8        On August 2, 2018, the State filed a petition for adjudication of wardship regarding L.S. and C.S. (and a third child not part of this appeal), which asserted, among other things, that the minors were "living in an environment injurious to their welfare" in the care of their parents because each parent had "unresolved issues of alcohol and/or substance abuse" that created "a risk of harm to the minors."

¶ 9        At the shelter care hearing held the following day, the court determined that probable cause existed for the filing of the petition for adjudication of wardship. The court found that both parents had "long standing substance abuse issues," and that "[d]espite treatment episode(s), their addictive behaviors continue." The court concluded that there was "immediate and urgent necessity to remove the minor(s) from the home" and that "leaving that minor(s) in the home [was] contrary to the health, welfare and safety of the minor(s)." Finally, the court held that "reasonable efforts have been made to keep the minor(s) in the home but they have *not* eliminated the necessity for removal." (Emphasis in original.) The court appointed DCFS as temporary

custodian of the minor children and admonished the parents regarding their obligation to cooperate with DCFS.

¶ 10    Following a pretrial hearing in mid-September 2018, at which each parent admitted the relevant paragraphs of the petition for adjudication of wardship, the court adjudicated the minors to be neglected. At the dispositional hearing in late October, the court received and reviewed the dispositional report, but no additional evidence was presented. The court found both parents unfit and held that it was in the best interest of the minor children "that they be made wards of the Court." As to respondent, the court stated that "she has been assessed as needing Level II substance abuse treatment." The court explained that "this will be her thirteenth episode of treatment—levels ranging from Level I to inpatient." The court set the permanency goal as a return home within 12 months.

¶ 11                          B. Termination of Parental Rights

¶ 12    In September 2019, the State filed a petition to terminate parental rights, asserting that each parent had "failed to make reasonable progress toward return of the children to the parent within any 9-month period following the adjudication of neglected minor" under section 2-3 of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3 (West 2018)). 750 ILCS 50/1(D)(m)(ii) (West 2018). Thereafter, numerous permanency hearings were held at which the court, after reviewing the submitted permanency reports, concluded that (1) the parents remained unfit and (2) it was in the children's best interest to remain wards of the court.

¶ 13    In December 2019, the court changed the permanency goal to substitute care pending determination of the petition to terminate parental rights.

¶ 14                                1. *Fitness Hearing*

¶ 15        At the January 2020 hearing on the petition to terminate parental rights, both parents admitted they "failed to make reasonable progress toward return of the children during any 9-month period following the adjudication of neglected minors." After questioning each parent on their admissions in the presence of their respective counsel, the court found the parents were unfit and set the matter for further hearings.

¶ 16        Following several continuances due to COVID-19 concerns, a hearing on the petition to terminate parental rights was held in July 2020. The parties presented a "Final and Irrevocable Consent to Adoption by a Specified Person or Persons" (surrender of parental rights) relating to L.S. and C.S., which consented to the adoption by Leslie S., the sister of respondent's husband, Lester. Paragraph 7 of the surrender forms state that the signatory understood "that by signing this consent I irrevocably and permanently give up all my parental rights I have to my child[ren]." The court accepted the "surrenders" and found them to have been knowingly and voluntarily made. An order terminating parental rights was entered on July 29 specifically finding that both parents had "voluntarily and irrevocably consented in open court" to the adoption of the two minors, L.S. and C.S. At that time, the permanency goal was changed to adoption.

¶ 17        Numerous permanency hearings were held throughout the remainder of 2020, throughout 2021, and into early 2022. At the conclusion of each hearing, the court found that the parents remained unfit and that it was still in the children's best interest that they remain wards of the court.

¶ 18        At the January 2022 permanency status hearing, the court received and reviewed a DCFS progress report stating that, "While both parents remained involved with parent-child visitations and completed a substance abuse assessment [in December], neither were cooperating

- 4 -

with random drug screens." Neither parent had undertaken a drug screening since late May 2021, and both had tested positive on their May 4, 2021, screenings.

¶ 19                                2. *The Children's Placement*

¶ 20            The two minor children have been the subject of several placements throughout the four years of this proceeding. The minors were initially placed with fictive kin in August 2018. In March 2019 they were moved to the home of Leslie S., a relative. In December 2020, the children were removed from Leslie S.'s home because she had allowed respondent to be alone with the minor children; they were then placed in a traditional foster arrangement with Veneice P. According to the circuit court, this removal voided the parents' previously accepted "surrender."

¶ 21            At some point in 2021, the minor L.S. had difficulties in foster care and was separated from his brother and given a different placement. In January 2022, the two were reunited in the care of John M., where they remained until the parental-rights determination.

¶ 22                        3. *Best Interest/Parental Rights Termination Hearings*

¶ 23            An evidentiary hearing was held in May 2022 concerning the best interest and termination issues. At this point, the third minor had been released from wardship due to his placement with guardians. The court accepted DCFS's May 2022 best interest report and various administrative reports into evidence and took judicial notice of the court file, all without objection. The DCFS best interest report discussed each of the ten statutory factors and assessed placement but could not offer a final opinion on placement because Leslie S., with whom placement of the minors was being considered, had not yet completed her required parenting programs. The report, however, noted that the parents had "expressed that they want the children to return to their care, or the care [of Leslie S.]"

¶ 24 At the May hearing, respondent testified that she believed her children would be best served if placed with Leslie S.; she believed the children felt safe with Leslie S. and that their home was with her. Respondent was asked, "Is it your goal to have your children ultimately with Leslie S.?", to which she answered, "Yes." When asked to explain her answer, respondent stated, "She loves them. I trust her. She'll know where they're at and keep them safe at all times. They'll be with family." The children's father did not testify. At the conclusion of the hearing, the court took the matter under advisement pending a final report and placement decision from DCFS.

¶ 25 On July 12, DCFS filed its supplemental status report regarding the placement decision for L.S. and C.S. According to the report, a decision had been made "that the boys will be placed back with their paternal aunt, Leslie [S.]" and that "the agency views [Leslie S.] as a relative to the children, and even if the court choses to terminate parental rights prior to a placement with her, the agency will still view her as a relative placement for the children." Elizabeth McCormick, a child welfare supervisor with The Baby Fold, elaborated on the DCFS status report during the July 19 hearing, stating that the children's current foster parent had been given notice that the children were to be placed with Leslie S. as of August 1.

¶ 26 Counsel for respondent represented that "we have no objection to this placement in the event the Court decides to terminate." Lester's counsel requested a continuance until after the placement occurred and the situation was "more stable." The court denied the request for a continuance.

¶ 27 4. *Court Rulings on Termination of Parental Rights*

¶ 28 At the conclusion of the July hearing, the trial court assessed the statutory best interest factors, remarking on each in reference to the two minors. Following its discussion of these

factors, the court reiterated its understanding that the parents "would like to have the children placed back with them, if not with them *** with [Leslie S.]," and stated:

> "[W]ith respect to the need for permanence I think that's the strongest factor given the age of the children and the age of this case. I think it supports termination of parental rights. Again permanency needs to be found. These children need to know that they're going to remain in a placement and that that's going to be their long-term placement, the place they can call home."

¶ 29    The court stated the "children are going to remain wards of the court. DCFS is going to continue as the guardian, and the permanency goal will be set at one of adoption." The court's written order concluded, "the State has proven by a preponderance of the evidence that it is in the best interests of the minors [C.S.] and [L.S.] to terminate the parental rights" of respondent and Lester.

¶ 30    This appeal followed.

¶ 31                                 II. ANALYSIS

¶ 32    Pursuant to *Anders v. California*, 386 U.S. 738 (1967), *People v. Jones*, 38 Ill. 2d 384 (1967), and *In re S.M.*, 314 Ill. App. 3d 682 (2000), appointed counsel moves to withdraw as counsel. Appellate counsel states in her motion that she has read the record and found no issue of arguable merit. Counsel lists three potential issues for review: (1) whether the trial court erred in finding the minor children were neglected; (2) whether the trial court erred in finding respondent was unfit; and (3) whether the trial court erred in finding that it was in the best interests of the minor children to terminate respondent's parental rights. We agree with appellate counsel that none of these potential issues has arguable merit.

¶ 33                          A. Neglect of the Minor Children

- 7 -

¶ 34        Counsel first contends there are no meritorious arguments warranting reversal of the court's order making the minor children wards of the court following its finding that they were neglected. It is unnecessary to consider whether there is any meritorious issue to be raised with respect to the court's findings, however, because this court would lack jurisdiction to consider them regardless. A dispositional order is a final and appealable order as of right under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). *In re Leona W.*, 228 Ill. 2d 439, 456 (2008). Moreover, appealing from a dispositional order is the "proper vehicle" to challenge a finding of abuse or neglect. *In re Barion S.*, 2012 IL App (1st) 113026, ¶ 36 (citing *Leona W.*, 228 Ill. 2d at 456). As no timely appeal was taken from the dispositional order, it is beyond question that there is no viable issue for appellate counsel to pursue.

¶ 35                    B. Termination of Parental Rights

¶ 36        Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2020)), the involuntary termination of parental rights involves a two-step process. First, the State must prove by clear and convincing evidence the parent is "unfit," as that term is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re D.D.*, 2022 IL App (4th) 220257, ¶ 27 (citing *In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006)). If the trial court makes a finding of unfitness, "then the State must prove by a preponderance of the evidence it is in the minor children's best interests that parental rights be terminated." *Id.* (citing *In re D.T.*, 212 Ill. 2d 347, 366 (2004)).

¶ 37        Because the trial court has the best opportunity to observe the demeanor and conduct of the parties and witnesses, "it is in the best position to determine the credibility and weight of the witnesses' testimony." *Id.* ¶ 28 (citing *In re E.S.*, 324 Ill. App. 3d 661, 667 (2001)). Further, in matters involving minors, the trial court is given "broad discretion and great deference."

*Id.* Thus, we will not disturb a trial court's unfitness finding and best-interests determination "unless they are contrary to the manifest weight of the evidence." *Id.* A trial court's decision is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.* (citing *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005)).

¶ 38    The State filed its petition to terminate parental rights in September 2019. At the January 2020 hearing, respondent admitted she was an unfit parent, acknowledging that she "failed to make reasonable progress toward the return of the children to you during that 9-month period following the adjudication of [a] neglected [minor]" during 2019. Respondent's admission was found to be given voluntarily and accepted by the court. The State then provided a factual basis to support the admission, noting that during the period in question respondent had failed to complete substance abuse counseling, failed to complete drug testing, failed to provide urine samples on numerous occasions, and did not complete the required mental health counseling. Following this stipulation, the trial court found respondent unfit by clear and convincing evidence.

¶ 39    In July, both parents executed documents surrendering their parental rights to C.S. and L.S. and consenting to their adoption by Leslie S., which were accepted by the court. However, in February 2021, the minors were removed from Leslie S.'s home and the consent to adoption documents were voided. As a result, the State's petition to terminate parental rights was again before the trial court.

¶ 40                                    1. *Parental Fitness*

¶ 41    After a review of the record, appointed counsel contends there are no meritorious arguments warranting reversal of the court's findings that respondent was unfit and unable to parent the minors. Here, we conclude that respondent has admitted her unfitness and as a result, she has forfeited her rights on appeal. Specifically, respondent admitted paragraph 11(C) of the

petition to terminate parental rights, which stated that respondent "is an unfit person" under section 1(D) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)) and that "her parental rights should be terminated" because she "failed to make reasonable progress toward the return of the children to the parent during any 9-month period following the adjudication of neglected minor" during the time frame running from December 1, 2018, through September 1, 2019. See, *e.g.*, *In re C.N.*, 196 Ill. 2d 181, 211 (2001) (quoting *In re J.A.*, 316 Ill. App. 3d 553, 565 (2000)) (Reasonable progress is defined as " 'demonstrable movement toward the goal of reunification.' ").

¶ 42　　　　The court found the admission was knowingly and voluntarily made, accepted the admission, and subsequently found respondent unfit by clear and convincing evidence based on her admission. As we stated earlier, "a party cannot complain of error that she induced the court to make or to which she consented" (*E.S.*, 324 Ill. App. 3d at 670) and is "estopped from taking a position on appeal that is inconsistent with a position the party took in the trial court." (Internal quotation marks omitted.) *In re William H.*, 407 Ill. App. 3d 858, 870 (2011).

¶ 43　　　　Accordingly, we agree with appointed counsel that there is no potentially meritorious argument to be made that the trial court's finding of unfitness was against the manifest weight of the evidence.

¶ 44　　　　　　　　　2. *Best Interests/Termination of Parental Rights*

¶ 45　　　　Finally, counsel contends that no meritorious argument can be raised to support termination of parental rights. In evaluating a child's best interest, the applicable statute provides that the trial court shall consider the following factors in the context of the child's age and developmental needs:

> "(a) the physical safety and welfare of the child, including food, shelter, health, and clothing;

(b) the development of the child's identity;

(c) the child's background and ties, including familial, cultural, and religious;

(d) the child's sense of attachments, including:

(i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel such love, attachment, and a sense of being valued);

(ii) the child's sense of security;

(iii) the child's sense of familiarity;

(iv) continuity of affection for the child;

(v) the least disruptive placement alternative for the child;

(e) the child's wishes and long-term goals;

(f) the child's community ties, including church, school, and friends;

(g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child." 705 ILCS 405/1-3(4.05) (West 2020).

¶ 46    Additionally, a trial court "may consider the nature and length of the child's relationship with his present caretaker and the effect that a change in placement would have upon

his emotional and psychological well-being." See *In re Jaron Z.*, 348 Ill. App. 3d 239, 262 (2004) (citing *In re J.L.*, 308 Ill. App. 3d 859, 865 (1999)).

¶ 47    "A trial court's finding that termination of parental rights is in a child's best interest will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re Shru. R.*, 2014 IL App (4th) 140275, ¶ 24. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the circuit court's finding on the basis of the evidence in the record." (Internal quotation marks omitted.) *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68.

¶ 48    Here, the trial court assessed each of the statutory factors set forth in section 1-3(4.05)(a-j) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (a-j)(West 2020)), and afterwards concluded:

> "So considering the evidence and testimony and the factors in this case the Court is finding it's in the best interest of the minors that the parental rights of [respondent] be terminated. I think the State has established that by more than a preponderance of the evidence."

¶ 49    The court concluded that termination would permit placement of the children with Leslie S., who offered the most suitable solution. According to the court, placement with Leslie S. "is a very familiar placement for the children" that provided "continuity of affection" and "a place that they can call home." It also concluded that placement with Leslie S. was "the strongest attachment at this point in time" for the children. Finally, the trial court found that Leslie S. had "certainly helped *** the children to develop their identity [of] who they are. That's a familial placement. I'm confident that she'll support the children understanding their familiar, cultural, and their religious backgrounds."

¶ 50　　　　　In addition to the trial court's factor analysis, we find it significant that Leslie S. was identified by DCFS as an acceptable adoptive placement for both minors and that, during the best interest hearing, respondent informed the court that she "[had] no objection to this placement in the event that the Court decided to terminate."

¶ 51　　　　　It is the province of the trier of fact to weigh the evidence, resolve conflicts in testimony, and assess the credibility of the witnesses. *People v. Evans*, 209 Ill. 2d 194, 209-10 (2004). As this court has long held, a court of appeals may not reweigh the evidence, "but can merely determine if the decision is against the manifest weight of the evidence." *Tate v. Pollution Control Board*, 188 Ill. App. 3d 994, 1022 (1989) (citing *Jackson v. Board of Review of the Department of Labor*, 105 Ill. 2d 501, 513 (1985)); see also *McKey & Poague, Inc. v. Stackler*, 63 Ill. App. 3d 142, 151 (1978). Further, in matters involving minors, the trial court "receives broad discretion and great deference." *D.D.*, 2022 IL App (4th) 220257, ¶ 28 (citing *E.S.*, 324 Ill. App. 3d at 667).

¶ 52　　　　　The record reveals that the trial court met its obligations under section 1-3(4.05) and that respondent failed to provide any evidence challenging the State's petition. Moreover, she affirmatively stated that it was in the minors' best interest to be placed with Leslie S. For these reasons, we agree that there is no basis on which counsel could argue that the termination of respondent's parental rights was against the manifest weight of the evidence.

¶ 53　　　　　　　　　　　　　　III. CONCLUSION

¶ 54　　　　　After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issue of arguable merit. Thus, we grant appointed counsel's motion to withdraw and affirm the judgment of the McLean County circuit court.

¶ 55        Affirmed.